# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF THE STATE OF NEW YORK

| | | |
|---|---|---|
| NICOLE GUBIN & BH SEVEN, LLC., | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 1:11-CV-02483 |
| | § | |
| AMBIT ENERGY L.P.; AMBIT NEW YORK, | § | |
| LLC; AMBIT ENERGY FUNDING INC.; | § | |
| AMBIT HOLDINGS, LLC; AMBIT GROUP, LP; | § | |
| AMBIT TEXAS, LLC; AMBIT ENERGY, LP; | § | |
| AMBIT MARKETING, LP; AMBIT GENPAR, | § | |
| INC. D/B/A BLUEVISTA ENERGY; | § | |
| BLUEVISTA ENERGY LLC; | § | |
| AMBIT MANAGEMENT, INC.; | § | |
| AMBIT ENERGY HOLDINGS, LLC; | § | |
| AMBIT SYSTEMS, INC.; AMBIT MARYLAND, | § | |
| LLC; AMBIT NORTHEAST, LLC; | § | |
| AMBIT ILLINOIS, LLC; AMBIT ENERGY (PA) | § | |
| AMBIT PENNSYLVANIA, LLC; | § | |
| GREENWAY HOLDINGS, LP; | § | |
| THE TRINITY RIVER COMMISSION | § | |
| FOUNDATION, INC.; AMBIT MANAGEMENT, | § | |
| INC.; JERE W. THOMPSON, JR.; | § | |
| CHRIS CHAMBLESS; | § | |
| DARRELL STARKWEATHER; JEFF HOEFKE; | § | |
| JOHN BURKE; AND | § | |
| CYNTHIA WILLIAMS YOUNG. | § | |

---

**DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' CIVIL COMPLAINT**

---

Defendants Ambit Energy L.P.[1]; Ambit New York, LLC; Ambit Holdings, LLC;

Ambit Group, LP; Ambit Texas, LLC; Ambit Energy, LP[2]; Ambit Marketing, LP; Ambit

Genpar, Inc.[3]; Bluevista Energy, LLC[4]; Ambit Management, Inc.[5]; Ambit Energy

---

[1]    This entity would be correctly named as "Ambit Energy, L.P."

[2]    Defendants do not know of such an entity because it has no records regarding a separate Ambit Energy, LP from the correct, Ambit Energy, L.P.

[3]    Plaintiffs improperly stated that Ambit Genpar Inc. was doing business as Bluevista Energy.

Holdings, LLC; Ambit Systems, Inc.; Ambit Northeast, LLC[6]; Ambit Illinois, LLC; Ambit Energy (PA)[7]; Ambit Pennsylvania, LLC; Greenway Holdings, LP; Jere W. Thompson, Jr.; Chris Chambless; Darrell Starkweather; Jeff Hoefke; John Burke; and Cynthia Williams Young (collectively, "Defendants"[8]) file these Motions to Dismiss Nicole Gubin and BH Seven, LLC's ("Plaintiffs") Civil Complaint (hereinafter, the "Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and alternatively 12(e).

## Preliminary Statement

This absurd case does not belong in this Court.   Indeed, it does not belong in any court.   The Complaint epitomizes the kind of baseless and vexatious suit that gives litigation a bad name among non-lawyers.  This Court should dismiss the Complaint and award fees to Defendants for their aggravation and wasted time.

It is difficult to know where to begin with the Complaint's deficiencies.  But, for ease of analysis, we start with the issue of jurisdiction.

---

[4]     Defendants do not believe a "Bluevista Energy, LLC," ever existed, but Ambit Energy, L.P. did operate for some time under the assumed name, "BlueVista Energy."

[5]     Plaintiffs include "Ambit Management, Inc." twice without any different spelling, punctuation, or explanation.

[6]     Plaintiffs improperly named "Ambit Maryland, LLC," which is now known as "Ambit Northeast, LLC."

[7]     Defendants cannot tell to what entity Plaintiffs refer given that they have failed to include what type of entity "Ambit Energy (PA)" is.   To Defendants' knowledge, such an entity does not exist. Defendants only know and represent "Ambit Pennsylvania, LLC."

[8]     The only defendants that the undersigned Counsel can affirmatively say it does not represent based upon Plaintiffs' characterizations and Defendants' records are Ambit Energy Funding Inc. and Trinity River Foundation, Inc.

Plaintiffs allege that this Court has subject matter jurisdiction over this dispute only through the diversity statute. But Plaintiffs—presumably New Yorkers[9]—have sued at least one New York corporation. Its inclusion as a defendant instantly destroys diversity.

Moreover, Plaintiffs have entirely failed to allege the citizenship of each defendant. Even without the inclusion of a New York defendant (whom Plaintiffs neglected to identify as such), the Complaint's diversity allegations are facially deficient. Several of the Defendants are individuals and partnerships. Plaintiffs omit to say anything specific about the citizenship of these individuals, or about the citizenship of the partnerships.

In lieu of such specific (and necessary) allegations, Plaintiffs opt to characterize each and every defendant—corporation, individual, and partnership—as a single, Texas-based entity. This is utterly insufficient as a matter of diversity pleading, in addition to being flat wrong as a matter of indisputable fact (see above).

The only basis for federal jurisdiction is diversity jurisdiction (alleged despite the fact that Plaintiff has sued a New York corporation and has failed to make even a minimal attempt to comply with established case law on alleging citizenship of partnerships and limited liability companies).

And, incidentally, the only element of diversity jurisdiction that Plaintiffs have properly pleaded is the amount in controversy. Plaintiffs have indeed alleged that the amount in controversy exceeds the statutory minimum of $75,000. They claim damages,

---

[9]    The Complaint states that BH Seven is a New York corporation, and that Plaintiff Gubin is a New York resident. It does not confirm, however, that Gubin is a New York citizen for jurisdictional purposes. But that is the least of the Complaint's shortcomings.

in this action apparently involving the retail provision of natural gas to a small number of homes in Queens, of $1,150,000,000. Yes, billion. (That, incidentally, excludes $13,000,000 that Plaintiffs seek in attorney's fees and costs.)

Plaintiffs bring two claims that could fall under the Court's federal question jurisdiction. They have failed, however, to identify them as such. The Complaint relies entirely upon the supposed existence of diversity jurisdiction (despite Plaintiffs having sued a New York corporation). That alone should dispense with the issue of a legitimate federal question.

But, even giving Plaintiffs every benefit of the doubt, Plaintiffs' arguably federal question claims are still improperly pleaded.

The Complaint's Fifth Cause of Action alleges fraud by a public utility company, giving rise (so Plaintiffs say) to a RICO claim. But the allegations in support thereof, like those for all the other claims, are so woefully vague that they cannot possibly support the proper assertion of a federal question. This Court therefore should likewise dispense with that claim.

Plaintiffs also bring a Cause of Action under the Federal Trade Commission Act. But the plain terms of that Act vest jurisdiction in the Federal Trade Commission to prevent unfair trade practices. It does not provide a private right of action in federal district court.

This Court therefore should dismiss the Complaint entirely. There is no diversity jurisdiction; there is no federal question at issue.

But even if this Court did have jurisdiction to hear the Complaint, dismissal would still be appropriate. The Complaint fails at even the most basic level to state a claim.

It is frankly unclear what exactly Plaintiffs are alleging.  Plaintiffs claim breach of contract, but fail to specify exactly what Defendants' contractual obligations were, or how they breached them.  Plaintiffs claim misrepresentation and fraud, but plead it with nothing like the particularity called for in Rule 9(b) of the Federal Rules of Civil Procedure.  Plaintiffs plead slander and libel, but fail to allege what Defendants were supposed to have written and said, which defendants wrote or said the offending material, or where and to whom it was written or spoken.  And Plaintiff Gubin alleges that she was a victim of harassment and discrimination, but fails to explain how it is that she was harassed or discriminated against.

In short, if ever a Complaint deserved dismissal, this is it.

In the alternative, Defendants request that this Court require that Plaintiffs make a more definite statement because the Complaint is so unintelligible that a responsive pleading cannot be framed.

Finally, Plaintiffs' Complaint should be dismissed for Improper Venue. The contract pursuant to which Plaintiffs may be bringing suit (the Complaint fails to specify which contract is at issue) provides that disputes should be brought to court in Dallas, not New York.

<u>ARGUMENT</u>

**I.   THIS COURT LACKS SUBJECT-MATTER JURISDICTION TO HEAR THE COMPLAINT**

**A.     This Court Lacks Diversity Jurisdiction over the Claim**

***1.   Plaintiffs lack diversity with the Defendants.***

Under 28 U.S.C. § 1332(a)(1), a district court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different States."

Plaintiffs have sued 26 defendants.  One of them is Ambit Energy Funding Inc. Ambit Energy Funding is a domestic business corporation registered in New York.[10]  It is thus a citizen of New York.

Plaintiffs allege that Plaintiff BH Seven "is a corporation incorporated under the laws of State of New York with its principal place of business in the State of New York."[11]

Diversity jurisdiction requires complete diversity between Plaintiffs and Defendants.  *Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322–23 (2d Cir. 2001) (quoting *Advani Enter., Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 160 (2d Cir. 1998)). Complete diversity is lacking here.  For that reason alone, this Court cannot hear this case on the basis of diversity jurisdiction.

***2.   The Complaint fails in any event properly to plead diversity jurisdiction.***

In addition to the fatal deficiency from incomplete diversity, Plaintiffs' jurisdictional allegations fail to give any explanation of underlying facts supporting just how diversity jurisdiction under 28 U.S.C. § 1332(a)(1) exists.

---

[10]   *See* Exhibit A, showing the New York status of Ambit Energy Funding, Inc.

[11]   Plaintiffs' Complaint, at 1.

It "is well established that 'the party seeking to invoke jurisdiction under 28 U.S.C. § 1332 bears the burden of demonstrating that the grounds for diversity exist…'" *Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322–23 (2d Cir. 2001) (quoting *Advani Enter., Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 160 (2d Cir. 1998)).  Here, however, Plaintiffs have contented themselves with the following formula:

> The Defendants, Ambit Energy L.P.; Ambit New York, LLC; Ambit Energy Fudning Inc.; Ambit Holdings, LLC; Ambit Group, LP; Ambit Marketing, LP; Ambit Genpar, Inc. d/b/a Bluevista Energy; Bluevista Energy LLC; Ambit Management, Inc.; Ambit Energy Holdings, LLC; Ambit Systems, Inc.; Ambit Maryland, LLC; Ambit Northeast, LLC; Ambit Illinois, LLC; Ambit Energy (PA); Ambit Pennsylvania, LLC; Greenway Holdings, LP; The Trinity River Commission Foundation, Inc.; Ambit Management, Inc.; Jere W. Thompson, Jr.; Chris Chambless; Darrell Starkweather; Jeff Hoefke; John Burke; and Cynthia Williams Young, hereinafter "AMBIT ENERGY" __is__ a corporation incorporated under the laws of the State of Texas with its principal place of business in State of Texas and its individuals also reside in the State of Texas; however, it does its business in the States of New York, Pennsylvania, Maryland, Illinois, and Texas and Plaintiffs can proceed both as a diversity matter as well as under the long-arm statutes.  The amount in controversy, without interests and costs, exceeds the sum or value specified by 28 U.S.C. § 1332.[12]

It is unclear which one of the 26 defendants actually "is a corporation incorporated under the laws of the State of Texas," much less how 6 individuals qualify as corporations.

It is of course true, as Plaintiffs allude to, that "a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  28 U.S.C. 1332(c).  But Plaintiffs list the citizenship or

---

[12]   Plaintiffs' Complaint, at 2 (emphasis added).

principal place of business for just one defendant. And it is not clear to which of the defendants this allegation of Texas citizenship even applies.

Moreover, Plaintiff Nicole Gubin failed to allege her own citizenship, focusing instead on residency.[13]

Plaintiffs have not made the basic effort to allege diversity. They have not even come close. Plaintiffs have preferred the option of suing anyone and everyone they can think of with the slightest connection to someone or something who may or may not have a role in the dispute.

But the law does not permit liability by six degrees of separation. Absent proper diversity allegations, the Complaint must be dismissed.

### 3. *Plaintiffs have also failed to plead the citizenship of each and every member of the limited partnerships and limited liability companies.*

In addition to Plaintiffs' failure to allege the citizenship of the listed defendants, Plaintiffs also omit the citizenship of all the partners in the unincorporated associations listed as defendants.

To satisfy its burden to demonstrate grounds for diversity jurisdiction under 28 U.S.C. § 1332, Plaintiffs must allege facts regarding complete diversity of <u>citizenship</u>, not mere residency, for each defendant because an allegation that the parties are "residents" of particular states does not satisfy the requirements of Rule 8(a)(1)—28 U.S.C. § 1332 demands diverse citizenship, not diverse residency. *Herrick Co., Inc. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322–23 (2d Cir. 2001) (concerning Plaintiffs' burden); *Leveraged*

---

[13]   *See* Plaintiffs' Comlaint, at 1 ("The Plaintiff NICOLE GUBIN in [sic] a person residing in the State of New York, County of Queens residing at 160-20 79th Avenue, Flushing, New York, 11366, . . . .").

*Leasing Admin. Corp. v. PacifiCorp Capital, Inc.*, 87 F.3d 44, 47 (2d Cir. 1996) ("It is also clear that a statement of the parties' residence is insufficient to establish their citizenship.") (citing *Wolfe v. Hartford Life & Annuity Ins. Co.*, 148 U.S. 389 (1893); *John Birch Soc'y v. National Broadcasting Co.*, 377 F.2d 194, 199 (2d Cir. 1967)).

Plaintiffs must also allege facts regarding the citizenship of each and every member of the unincorporated associations listed as defendants. "[F]or purposes of establishing diversity, a partnership has the citizenship of each of its partners." *Herrick Co., Inc. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001).[14]  Each member's citizenship must be alleged because "unincorporated associations have long been considered to be citizens of each and every state in which the association has members." *Baer v. United Servs. Auto. Ass'n*, 503 F.2d 393, 395 (2d. Cir. 1974).

Consequently, "if the unincorporated association party to a lawsuit has any member whose state citizenship coincides with the state citizenship of any of the opposing parties in the lawsuit, a federal district court has no diversity jurisdiction." *Id.*

Because it is Plaintiffs' burden to demonstrate grounds for diversity jurisdiction by showing complete diversity against each and every defendant—including the partners of each unincorporated association—the Complaint fails to invoke the jurisdiction of the federal courts because it lacks these essential facts.

---

[14]    *See also Woodward v. D.H. Overmyer Co.*, 428 F.2d 880, 883 (2d Cir. 1970) ("[it is a] long-standing rule that, for purposes of diversity jurisdiction, the court looks to the citizenship of the partners" to determine the citizenship of a partnership); *Colonial Realty Corp. v. Bache & Co.*, 358 F.2d 178, 183 (2d. Cir. 1966) ("[The] citizenship of a limited partnership [is] not sufficiently made out for diversity purposes by alleging the state of its organization, even though state law permitted the partnership to sue or be sued in the firm name.").

B.     **Plaintiffs have failed to state proper claims to invoke this Court's Federal Question Jurisdiction**

Lacking diversity jurisdiction, Plaintiffs cannot bring their common law and New York state claims in this Court.  That leaves them with two claims arguably within the purview of the Court's Federal Question jurisdiction.  Plaintiffs, however, have not even alleged federal question jurisdiction.  Nor could they, despite the federal nature of the two below claims, for the reasons set forth below.

### 1.   *Plaintiffs have not stated a valid RICO claim*

Plaintiffs' Fifth Cause of Action is styled as a RICO claim.

To state a claim for damages under RICO, a plaintiff has two pleading burdens: (A) that defendant(s) violated the substantive RICO statute (18 U.S.C. § 1962) and (B) that plaintiff was "injured in his business or property *by reason of* a violation of section 1962." *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983).

The allegation of a violation of the first burden has seven constituent elements: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate and foreign commerce." *Id.*

Plaintiffs fail to allege even one of these seven elements, let alone to explain how Defendants injured them.  Rather, the entirety of Plaintiffs' RICO claim consists of the following conclusory statements and recitation of pleading standards:

> Plaintiffs repeat and reallege each and every allegation contained in Paragraphs "1" though [*sic*] "26" as if fully set forth herein.  The customers are promised twelve months savings reports and the Defendants usually fail to deliver this to the customers thereby also compromising the

reputation of the Plaintiffs.   The Defendants fail to give free supply payments to the Plaintiffs and its customers.

The District Courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter [18 USCS § 1962] by issuing appropriate orders, including, but not limited to, ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.   Such is warranted in this matter against the Defendants Ambit Energy and its individuals.

By virtue of the foregoing, the Plaintiffs demand judgment for the fraud by public utility (RICO) in the amount of one hundred million dollars ($100,000,000).[15]

Plaintiffs' allegations are so far off the mark that it would be hard to recognize their allegations as a RICO claim, had Plaintiffs not labeled it as such.   In any event, calling it a RICO claim does not make it so.   This Court should dismiss Plaintiffs' Fifth Cause of Action.

## 2. *Plaintiffs cannot maintain a private claim for violations of 15 U.S.C. § 45(a)*

Plaintiffs' Sixth Cause of Action is for "unfair business practices."  As with the rest of the Complaint, it is unclear exactly what Plaintiffs are alleging.  Plaintiffs nonetheless arguably invoke Federal Question jurisdiction when they state that:

The Defendants are a "multi-level marketing" company operating as a pyramid scheme which makes false and misleading statements that constitute deceptive acts or practices in violation of Section 5(a) of the Federal Trade Commission (the 'FTC Act,' 15 U.S.C. § 45(a)).[16]

---

[15]   Plaintiffs' Complaint, ¶¶ 27–30.

[16]   Plaintiffs' Complaint, ¶ 33.

A private party, however, cannot bring suit under the Federal Trade Commission Act to remedy unfair methods of competition. *Moore v. New York Cotton Exch.*, 270 U.S. 593 (1926); *Naylor v. Case & McGrath Inc.*, 585 F.2d 557, 561 (2d Cir. 1978); *Washington v. U.S. Tennis Ass'n*, 290 F. Supp. 2d 323, 329 (E.D.N.Y. 2003). Only the Federal Trade Commission may bring this claim. Consequently, Plaintiffs cannot bootstrap this allegation into a basis for this Court's subject matter jurisdiction.

In summary, this Court lacks diversity jurisdiction over this case. Plaintiffs' two (arguably) federal question causes of action, moreover, are unavailing. Absent either basis of subject matter jurisdiction, this Court must dismiss the case entirely.

## II. EVEN IF THIS COURT HAD JURISDICTION, THE COMPLAINT FAILS ON EVERY COUNT TO STATE A VALID CLAIM FOR RELIEF

Even if Plaintiffs wished away the deficiencies in their jurisdictional pleadings, their Complaint still would lack a basis for going forward. Where their allegations call for notice pleading under Federal Rules of Civil Procedure 8, they have not cleared that relatively low bar. Where their allegations call for them to plead with particularity pursuant to Federal Rules of Civil Procedure 9, they fall, *a fortiori*, far short of the requisite pleading standard.

Plaintiffs' "causes of action" fail to give Defendants "fair notice of what the . . . claim[s] [are] and the ground[s] upon which [they] rest," as Plaintiffs are required to do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)). Plaintiffs fail in many cases even to make a conclusory statement of the elements of purported claims, much less to allege corresponding, supporting facts. Consequently,

Defendants have no notice—much less fair notice—of what Plaintiffs' naked accusations even concern.

The Complaint thus engages in precisely the sort of pleading that the Supreme Court has recently rejected as insufficient:

> [T]he pleading standard [that] Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal citations omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57, 570 (2007)).

Consequently, the Court has developed what it calls "the two-pronged approach": (1) the tenet that the court accepts Plaintiffs' allegations as true is inapplicable to legal conclusions—"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"; (2) "only a complaint that states a *plausible* claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1949–50 (emphasis added).

Plaintiffs' Complaint fails for the precise reasons explained in *Iqbal*. For every claim, Plaintiffs, at best, make mere "threadbare recitals of the elements of a cause of action." If any claim is supported at all, it is only by conclusory statements.

Moreover, even if all of Plaintiffs' claims were adequately presented—which they manifestly are not—most, if not all, their claims still fail due to implausibility. One need look no further for *per se* evidence of implausibility than the amount in damages Plaintiffs seek: $1,150,000,000.00. This Court is a forum for litigation, not a ticket to a lottery jackpot.

As shown claim-by-claim below, Plaintiffs' allegations are defective and fail to state a claim in conformity with the minimum standard set forth in *Iqbal*. They should be accordingly dismissed.

### A.    Breach of Contract

Plaintiffs' first cause of action is for breach of contract. Plaintiffs, however, fail to describe—or even properly to identify—any contract between the parties, its terms, or how the alleged actions violated any contract. Instead of focusing on these essential elements, Plaintiffs allege the following:

> The Defendants Ambit Energy breached the Contract with Plaintiff Nicole Gubin and Plaintiff BH Seven by failing to accurately pay customer residual income and weekly leadership bonuses to the Plaintiffs. . . . fraudulently cancel[ling] customers . . . performing favoritism to its consultants by providing leads to chosen consultants while not providing any leads to the Plaintiffs . . . arbitrarily suspend[ing] the Plaintiffs' paid website which prevented the Plaintiffs from functioning in the business, prevent[ing] the Plaintiffs from signing up new consultants and customers and expanding the business.[17]

Even assuming the truth of these allegations they do not properly state a breach of contract claim.

---

[17]    Plaintiffs' Complaint, ¶¶ 11–15.

To establish a *prima facie* case for breach of contract, Plaintiffs must plead and prove facts showing: (1) the existence of a contract; (2) a breach of that contract; (3) damages resulting from breach. *RIJ Pharm. Corp. v. Ivax Pharms., Inc.*, 322 F. Supp. 2d 406, 412 (S.D.N.Y. 2004).

Here, Plaintiffs allege absolutely no facts as to the existence of a contract, nor how one of its terms was breached. They do not specify which of the Defendants were counterparties to the contract, which of them committed what breaches, when, or how (let alone why).

Nonetheless this contract, whatever it was, must have been a lucrative one: Plaintiffs seek $50,000,000.00 for its breach. As the saying goes, it would be funny if it were not so serious.

Plaintiffs' incoherent allegations deprive Defendants of the chance to make a coherent defense. If it reaches the sufficiency of the pleading, this Court should dismiss Plaintiffs' breach of contract claim.

### B.     Misrepresentation

Plaintiffs allege misrepresentation without ever describing what the alleged misrepresentation might be. Instead, Plaintiffs make the conclusory statement that "[b]oth the Plaintiffs and the public are harmed by misrepresentation by Defendants."[18]

Without explanation, Plaintiffs continue as follows:

> Likewise, pursuant to the Natural Gas Act, which was intended to provide, through exercise of national power over interstate commerce, agency for regulating wholesale distribution to public service companies of natural gas moving interstate, it the [sic] conviction that public interest

---

[18]     Plaintiffs' Complaint, ¶ 18.

requires consumers from excessive prices for natural gas, but was also manifesting its concern for legitimate interests of natural gas companies in whose financial stability gas-consuming public has vital stake. The Defendants [sic] misrepresentations violate that Act, additionally electric supplies [sic], and in total harm public interest.

By virtue of the foregoing, the Plaintiffs demand judgment for the misrepresentation in the amount of fifty million dollars ($50,000,000).[19]

Plaintiffs fail to explain how the so-called Natural Gas Act (it is unclear which Natural Gas Act) was purportedly breached by the supposed "misrepresentation," which Plaintiffs appear to be keeping secret.[20]  Nor is there any explanation as to how Plaintiffs have standing to bring a cause of action under the Natural Gas Act, or whether that Act provides a private right of action.

Because the misrepresentation is neither described nor intimated, it is impossible for Defendants to understand what it is that Plaintiffs are even talking about.  For example: is Plaintiffs' misrepresentation claim a negligent, intentional, or fraudulent misrepresentation claim?  Plaintiffs fail to specify.

Nevertheless, Plaintiffs seek $50,000,000.00 for this unexplained and unspecified misrepresentation.  Applying *Iqbal*, not to mention the canons of common sense, these allegations do not even rise to the level of conclusory statements listing the elements of the cause of action.  Since the Court held that such conclusory statements were insufficient to state a claim, Plaintiffs' musings on natural gas certainly fail to state a claim.

---

[19]   Plaintiffs' Complaint, at ¶¶ 19–20.

[20]   *See* Plaintiffs' Complaint, ¶¶ 19–20.

## C.      Fraud by Ambit

Allegations of fraud are subject to a heightened pleading standard under F.R.Civ.P 9(b).  Specifically, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

Plaintiffs' state their fraud cause of action as follows:

> Defendants defrauded the Plaintiffs by not paying proper weekly compensations, which included, but is not limited to, residuals, bonuses, commissions, and free energy.  The Defendants defrauded Plaintiffs by not paying them their monthly customer residual income and weekly leadership bonuses.
>
> The Defendants made false accusations the Plaintiffs of [sic] alleged violations of corporate policies and procedures, including 4.22.3 actions of household members or affiliated individuals; 4.8.1 conflicts of interests of non-solicitation; 4.8.2 sale of competing energy services; 4.8.4 downline activity reports, in order to suspend their website and prevent them from collecting their compensations in forms [sic].
>
> The Plaintiffs sign up three customers to get regular bonus payments, and with five new customers the Plaintiffs were supposed to receive extra bonuses; however, the Defendants falsely claimed that the fifth customer cancel[l]ed even though that customer did not cancel, in order not to pay the extra bonuses to the consultants and to the Plaintiffs who signed up those consultants or whose consultants were on their mult-level marketing [sic].[21]

Like the others before it, these allegations do not describe, nor do they support, the requisite elements of a fraud claim under New York law: (1) misrepresentation of a material fact; (2) falsity of that representation; (3) an intent to defraud thereby; (4) reasonable reliance on the representation; and (5) damages.  *Chanayil v. Gulati*, 169 F.3d 168, 171 (2d Cir. 1999).

---

[21]    Plaintiffs' Complaint, ¶¶ 21–23.

The problems with this "cause of action" are myriad.  (1) Plaintiffs merely list two of the five elements of fraud, wholly omitting three: falsity, intent to defraud, and reasonable reliance on the representation.   (2) Supporting facts providing some sort of factual explanation are wholly missing. (3) The two listed misrepresentation allegations do not show how the alleged misrepresentations concerned material facts.  (4) Plaintiffs do not provide any factual enhancement of the two alleged misrepresentations being made: *e.g.*, where, when, and to whom were they made?  (5) There is no explanation of how the second nondescript misrepresentation was false.

Hence Plaintiffs fail to "state with any particularity the circumstances constituting" the purported fraud.  Plaintiffs even fail *generally* to allege Defendants' intent.

There is simply very little, if anything, explained here.  And the implausibility of the claim is illustrated by the $50,000,000.00 in damages that Plaintiffs seek.  Of all the egregious offenders in the Complaint, this fraud claim is among the worst.

### D.     Piercing the Corporate Veil

Plaintiffs style their Fourth Cause of Action as one to pierce the corporate veil.  As an initial matter, that claim is only as good as Plaintiffs' fraud claim.  If that claim fails—as Defendants believe it must—there is no activity to require veil-piercing in the first place.

In any event, outside of seeking another unexplained $50,000,000.00 for these purported actions, Plaintiffs make no mention of the essential elements to support a court's decision to pierce the corporate veil.

New York law establishes two requirements to pierce the corporate veil and to hold an individual liable for corporate action: (1) the person must dominate the corporation, effectively dictating its action and (2) the person must use that control to abuse the privilege of doing business in the corporate form by perpetrating a wrong against the plaintiff such that a court in equity will intervene. *Badian v. Elliott*, 165 Fed. App'x 886, at *2 (2d Cir. 2006).

Here is what Plaintiffs say by way of veil-piercing allegations:

> [The individuals named as Defendants] personally participated in the commission of the fraud and they acted egregious by defrauding the Plaintiffs and the customers of proper calculations for the compensations and costs and savings, and the Court must pierce the corporate veil to make them each individually liable for their misconduct to the Plaintiffs and the public.[22]

Simply put, these allegations do not support a finding to pierce the corporate veil, even if there was an underlying misdeed.  There is no claim here.

## E.    RICO U.S.C. § 1961

Defendants have set forth the infirmities in Plaintiffs' RICO claim in Section I(B)(1) above.

## F.    Unfair Business Practices

Defendants have set forth the infirmities in Plaintiffs' Sixth Cause of Action, purporting to seek redress for violations of the FTC Act, in Section I(B)(2) above.

---

[22]    Plaintiffs' Complaint, ¶ 25.

### G.    Internet Fraud

Plaintiffs allege that "Defendants committed internet and wire fraud against the Plaintiffs since all transactions and payments on the transactions occur through the internet and Defendants' websites."[23]

It is unclear which laws Defendants allegedly violated, or how exactly they did so. There is no specific cause of action for "internet fraud" under either New York or federal law.  Nor is there a private right of action for wire fraud, which is a criminal charge rather than a civil cause of action.  *Fresh Meadow Food Servs., LLC v. RB 175 Corp.*, 282 Fed. App'x 94, 100 (2d Cir. 2008).[24]

To the extent that Plaintiffs are making a species of fraud claim, it must fail for lack of particularity.  The allegations of "internet fraud" are no more specific and detailed than those Plaintiffs make in their Second Cause of Action, styled "Fraud by Ambit."

Note, finally, that Plaintiffs seek another $50,000,000 for these supposed violations of a non-existent law. Plaintiffs yet again have failed to state a valid claim.

### H.    Permanent Injunction

Plaintiffs seek a permanent injunction.  They state that:

> Defendants need to be preliminarily and permanently enjoined and restrained from operating its business, soliciting, or enrolling customers and consultants, due to irreparable harm that it will cause to the Plaintiffs

---

[23]    Plaintiffs' Complaint, ¶ 35.

[24]    *See also Wilcox v. First Interstate Bank*, 815 F.2d 522, 533 n. 1 (9th Cir.1987) (Boochever, J., dissenting) (citing *Ryan v. Ohio Edison Co.*, 611 F.2d 1170, 1177-79 (6th Cir.1979) (paucity of legislative history or any other evidence showing intent to create private cause of action under 18 U.S.C. § 1341 [the Mail-Fraud Statute, which includes wire fraud] means other Cort factors need not be addressed), and *Bell v. Health-Mor, Inc.*, 549 F.2d 342, 344-45 (5th Cir.1977)); *Napper v. Anderson*, 500 F.2d 634, 636 (5th Cir.1974) (like mail fraud statute, no Congressional intent to create federal cause of action for damages under 18 U.S.C. § 1343 prohibiting wire fraud), *cert. denied*, 423 U.S. 837 (1975).

and the public and the States of New York, Pennsylvania, Maryland, and Texas.[25]

Plaintiffs then go on list the elements that must be shown before a Court can enter an injunction.[26]  They then state:

> In this said action, the Plaintiffs have high likelihood of success on the merits, Plaintiffs and public will suffer irreparable harm if an injunction is not granted due to arbitrary and questionable billing practices and compensations, and there is not adequate remedy at law due to the Defendants' misconduct and deceptive and false business practices.[27]

That is the sum total of Plaintiffs' injunction request.  Plaintiffs give no supporting factual allegations whatsoever.  Because their  allegations patently fail to state a cause of action—let alone to support a reasonable finding of the risk of irreparable harm or likelihood of success on the merits—this Court should deny Plaintiffs' request for any injunction of any kind.

## I.      Defamation

Plaintiffs' Ninth and Tenth Causes of Action are styled defamation and libel, respectively.  Inasmuch as the allegations are susceptible of being understood, it appears that the Ninth Cause of Action, for defamation, is one for slander.

Plaintiffs allege as follows:

> The Defendants defamed the Plaintiffs by falsely accusing them of violating company policies, suspending their status, then cancel[l]ing the suspension, without every [sic] presenting any substantive evidence of any violations.  The Defendants also informed Ambit leadership, consultants, and customers that the Plaintiffs should be avoided thereby causing harm to the Plaintiffs personal and business reputations.[28]

---

[25]   Plaintiffs' Complaint, ¶ 37.

[26]   *See id.*

[27]   *Id.*

[28]   Plaintiffs' Complaint, ¶ 39.

Under New York law, to establish a defamation claim, Plaintiffs must show "a false statement, published without privilege or authorization to a third party, constituting fault . . . and it must either cause special harm or constitute defamation per se." *Peters v. Baldwin Union Free School Dist.*, 320 F.3d 164, 169 (2d Cir. 2003) (quoting *Dillon v. City of New York*, 704 N.Y.S.2d 1, 5 (N.Y. 1999)).

Plaintiffs fail to explain what false statement was published without privilege or authorization to a third party.  Plaintiffs do allege a(n allegedly) false accusation, but it is unconnected with any publication.  Nor are any facts provided explaining the basis of Plaintiffs' allegations.  Consequently, it is also unclear to whom it was published.

At best, Plaintiffs have provided "labels and conclusions," which remain "naked assertion[s]" devoid of "further factual enhancement."  *See Iqbal*, 129 S. Ct. at 1949–50.  This pleaded claim, like all the others, therefore falls well short of the standard required by *Iqbal*.

But the insufficiency and vagueness of the allegations of course do not stop Plaintiffs from seeking $50,000,000.00 in damages for whatever it is Defendants supposedly said beyond "falsely accusing [Plaintiffs] of violating company policies."  This claim should also be dismissed.

### J.    Libel

Plaintiffs' Tenth Cause of Action states:

The Defendants made false accusations that the Plaintiffs allegedly violated corporate policies and procedures, including 4.22.3 actions of household members or affiliated individuals; 4.8.1 conflicts of interests of non-solicitation; 4.8.2 sale of competing energy services; and 4.8.4 downline activity reports.  The Defendants libeled the Plaintiffs as a defamation was expressed in written form, herein communications [sic] to

Ambit leadership, consultants, and customers that caused to Plaintiffs [injures sic] as to Plaintiff's [sic] person and reputation and thereby expose [sic] the Plaintiffs to public hatred, contempt and/or ridicule, and/or financial injury and/or to impeach Plaintiff's [sic] honesty, integrity, and/or reputation.

By virtue of the foregoing, the Plaintiffs demand judgment for the libel in the amount of fifty million dollars ($50,000,000).[29]

To recover in libel under New York law, Plaintiffs must establish five elements: "(1) a written defamatory statement of fact concerning the plaintiff; (2) publication to a third party; (3) fault (either negligence or actual malice depending on the status of the libeled party); (4) falsity of the defamatory statement; and (5) special damages or per se actionability (defamatory on its face)." *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 176 (2d Cir. 2000).

For both listed misrepresentations, Plaintiffs fail to explain (1) what written false statement (2) was published to what third party, (3) Defendants' alleged fault, or (5) any special damages or per se actionability.

Similarly, Plaintiffs fail to provide allegations of factual support.  None of Plaintiffs' allegations is connected to any  facts of publication; nor are any facts provided explaining the basis of Plaintiffs' allegations, much less the claimed falsity of the listed accusations.

Consequently, Plaintiffs' allegations fail even to clear the "labels and conclusions," pleading hurdle which the Supreme Court held insufficient to state a claim.  *See Iqbal*, 129 S. Ct. at 1949–50.  Despite all this, Plaintiffs still muster the gall yet again to seek $50,000,000.00.

---

[29]   Plaintiffs' Complaint, ¶ 41.

K.      Harassment

The entirety of Plaintiffs' Eleventh Cause of Action is as follows:

> Plaintiffs repeat and allege each and every allegation contained in Paragraphs "1" though [sic] "42" as if fully set forth herein.  It is well-settled that in order to establish a harassment claim, Plaintiff Nicole Gubin must show that her work environment relationship was 'permeated with discriminatory intimidation, ridicule, and insult' that was so 'severe or pervasive' that it altered the conditions of her employment.  <u>Harris vs. Forklift Sys., Inc.</u>, 510 U.S. 17 (1993); <u>Moises Mendez vs. Starwood Hotels & Resorts Worldwide, Inc.</u>, 2010 U.S. Dist. Lexis 107709 (SDNY 2010)[.] The Defendants harassed the Plaintiffs severely and pervasively by committing fraud against Nicole Gubin, denying her rightful compensation for her services, wrongfully shutting down the website, and damaging her name and reputation in the public utilities sector.
> By virtue of the foregoing, the Plaintiffs demand judgment for the harassment in the amount of fifty million dollars ($50,000,000).[30]

Once again, it is difficult to know where to begin.  First, it is self-evident that only Plaintiff Gubin, and not Plaintiff BH Seven—a corporation—can state a claim for harassment.

Second, it is unclear what kind of claim Plaintiffs are making.  The New York State Human Rights Law and the New York City Human Rights law both contain anti-harassment provisions and remedies.  Plaintiffs do not cite to any of them.

The case law to which Plaintiffs (conclusorily) refer concerns hostile or abusive work environments as defined in Title VII of the Civil Rights Act of 1964.  Assuming, *arguendo*, that Plaintiffs are making a Title VII claim, they have failed to assert it validly. Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

---

[30]    Plaintiffs' Complaint, ¶¶ 43–44.

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).  "When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult, . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, . . . Title VII is violated."  *Id.*

But in order to make such a claim, a plaintiff must first establish that (s)he is an employee.  *See Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 (2d Cir. 2008) ("Title VII, by its terms, applies only to 'employees'"; "Once a plaintiff is found to be an independent contractor and not an employee . . . the Title VII claim must fail.").  Plaintiff Gubin does not do that.

Plaintiffs likewise do not explain how the *workplace* was permeated with discriminatory intimidation, ridicule, and insult, or how Nicole Gubin was discriminated against "*because of* such individual's race, color, sex, or national origin."  *Id.* (emphasis added).

Thus, Plaintiffs' harassment claim remains one amounting to "labels and conclusions" that are nothing more than "naked assertion[s]," devoid of "further factual enhancement," thus failing under *Iqbal.  See* 129 S. Ct. at 1949–50.  But none of that stops Plaintiffs from seeking—yes—another $50,000,000.00 in damages.

### L.     Discrimination

Plaintiffs' discrimination claim states:

The Defendants discriminated against the Plaintiffs as she [sic] is a minority woman and discriminated against her for her Jewish religion.  To state a prima facie case for discrimination under NYSHRL and NYCHRL, a Plaintiff must show that (1) she was a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and the (4) the [sic] circumstances give rise to an

inference of discrimination.   Ruth Fowler vs. Scores Holder Company, Inc.[,] 677 F. Supp. [2d] 673[](SDNY 2009); McDonnell Douglas Corp. vs. Green, 411 U.S. 792 (1973)[.]   The Defendants would initiate communications with her on Saturdays and high Jewish holidays knowing that Plaintiffs cannot pick up the telephone on such days, and they took advantage of her to deny her proper compensation because she is a female and did not do the same to similar level consultants who are males.[31]

Plaintiffs have (for once) identified and stated all the grounds of a **prima facie** case.  In this case, it is for employment discrimination under the New York State Human Rights Law and the New York City Human Rights Law.

But in order to succeed in a claim of employment discrimination, a plaintiff must first **allege to be** an employee.  *Fowler v. Scores Holding Co., Inc.*, 677 F. Supp. 2d 673, 679 (S.D.N.Y. 2009) ("The NYSHRL covers employees, not independent contractors"). Plaintiff Gubin has not done so.

Thus, Plaintiffs have failed to give Defendants fair notice under the requisite elements for a discrimination cause of action.  Given what has been alleged, Plaintiffs' discrimination claim is implausible under *Iqbal* because the plaintiff has not pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *See* 129 S. Ct. at 1949–50.

**M.   Punitive Damages**

Plaintiffs' Thirteenth Cause of Action is not a cause of action at all.  It is, rather, a request that the Court assess punitive damages.

---

[31]   Plaintiffs' Complaint, ¶ 45.

Apparently not content with seeking $650,000,000.00 and a permanent injunction in their first twelve claims, Plaintiffs seek to add further injury to the insult by asking for $250,000,000.00 more in unspecified punitive damages.  Their reasoning:

> The Defendants should be punished due to the harm caused to the Plaintiffs and the public, and punitive damages should be ordered against the Defendants and its individuals by piercing the corporate veil.  The punitive damages are to reform or deter future misconduct by multi-level marketing companies.  It is necessary when compensatory damages alone will be an inadequate remedy due to Defendants' misconduct and their conduct was insidiously egregious.  Furthermore, the punitive damages should be awarded on the breach of contract as there was a breach of implied covenant of good faith and fair dealings towards the Plaintiffs and the public.[32]

This same litany of conclusory allegations and unsupported assertions does nothing to advance Plaintiffs' claim.  It serves only to make a vexatious and outrageously inflated suit still more absurd.  Defendants highlight these allegations only to show the Court how ridiculous and lacking in merit Plaintiffs' claims are.  Defendants respectfully submit that this Court should bear Plaintiffs' punitive damages "cause of action" in mind when it comes to consider the fees and costs of this proceeding.

N.    **Liquidated Damages**

Inexplicably, Plaintiffs seek liquidated damages without alleging a contract providing for the same.

Plaintiffs state:

> The Defendants should be punished to the harm [sic] caused to the Plaintiffs and the public, and liquidated damages should be ordered additionally against the Defendants and its individuals by piercing the corporate veil.
>     Liquidated damages should be awarded as the injury is uncertain or

---

[32]   Plaintiffs' Complaint, ¶ 47.

difficult to quantify, a reasonable amount for anticipated harm [sic] and it is [sic] damages to the Plaintiff [sic] as opposed to a penalty.
By virtue of the foregoing, the Plaintiffs demand judgment for the liquidated damages in the amount of two hundred and fifty million dollars ($250,000,000).[33]

As this Court well knows, liquidated damages are a sum certain stipulated in a contract in lieu of a calculation of damages in one party breaches the contract. BLACK'S LAW DICTIONARY 175 (3d. Pocket ed. 2006) (emphasis added); *see In re United Merchants and Mfrs., Inc.*, 674 F.2d 134, 142–43 (2d Cir. 1982) (describing the operation of a liquidated damages provision in a contract). Plaintiffs, however, appear to be treating them as another species of—and excuse for—punitive damages.

The only conclusion that Defendants can draw from these ridiculous assertions is that Plaintiffs are contriving to find every conceivable means of harassing Defendants, rather than vice versa. Once again, this Court should consider this "cause of action" when it rules on the fees and costs in this proceeding.

## O.    Attorney's Fees and Costs

Plaintiffs' Fifteenth—and mercifully final—"Cause of Action" is  for attorney's fees and costs. Apparently, Plaintiffs expect an expensive litigation:

By virtue of the foregoing, the Plaintiffs demand judgment for the attorneys [sic] fees, forensic evaluations, and costs for this litigation in the amount of thirteen million dollars ($13,000,000) or an amount determined to be fair by the Court.

New York law provides for attorney's fees and costs only in special circumstances. *See Grace v. Ludwig*, 484 F.2d 1262, 1267 (2d Cir. 1973). Plaintiffs state no grounds whatsoever for the recovery of attorney's fees. Consequently, Defendants do not know on

---

[33]    Plaintiffs' Complaint, ¶¶ 49–51.

what grounds Plaintiffs allege to have a right to attorney's fees.  Given the general rule denying attorney's fees unless specifically provided for, Defendants do not have fair notice of Plaintiffs' claim, and cannot see a claim to which they might respond.

Defendants nonetheless do agree with Plaintiffs that an award of attorney's fees and costs is appropriate in this case.  But those fees and costs should go to Defendants.

This case is entirely frivolous.  Plaintiffs have no basis for bringing it in federal court.  On the merits, furthermore, each and every claim is at best conclusory and at worst incoherent.

Defendants have had to go to the trouble of defending a suit that should never have been brought.  The corporations and partnerships have endured adverse publicity; the individuals have suffered unnecessary distress.

### III.   IN THE ALTERNATIVE, THIS COURT SHOULD ORDER PLAINTIFFS TO MAKE A MORE DEFINITE STATEMENT

For all the reasons set forth above, Defendants move, in the alternative, for a more definite statement under Federal Rule of Civil Procedure 12(e). Defendants are entirely unable to frame a responsive pleading concerning any claim in the Complaint because every one of them is hopelessly vague and/or ambiguous.

### IV.   IN THE ALTERNATIVE, THIS COURT SHOULD DISMISS THIS CASE ON THE GROUND OF IMPROPER VENUE

If Plaintiffs are purporting to sue under the contract attached as Exhibit B, then Defendants move to dismiss for improper venue.  Plaintiffs' place of filing does not comply with the valid forum selection clause included in the attached contract.  Dallas, Texas is the appropriate venue for such a contractual dispute.  *See* Exhibit B, ¶ 9; *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007).

Defendants reserve the right to move to transfer venue should this Court opt to order Plaintiffs to make a more definite statement.

### V.   THIS IS A TEXTBOOK CASE FOR THE AWARD OF FEES AND COSTS TO DEFENDANTS. THIS COURT SHOULD SO ORDER.

As shown above, Plaintiffs' suit is frivolous and vexatious, and it supports an award for attorney's fees and costs under federal law for at least three reasons.

*First*, Plaintiffs have brought suit for claims that are not warranted under the law—internet fraud, wire fraud, unfair business practices, discrimination and harassment under Title VII despite being an independent contractor, and liquidated damages—permitting an attorney's fees award to Defendants.  Fed. R. Civ. P. 11(b)(2); *Knipe v. Skinner*, 19 F.3d 72, 77 (2d Cir. 1994).

*Second*, Defendants should also be awarded attorney's fees and costs because Plaintiffs' suit wholly lacks evidentiary support for every claim, as shown above.  Fed. R. Civ. P. 11(b)(3); *O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996).

*Third*, Defendants should be entitled to attorney's fees because, as a result of Plaintiffs' claims to vindicate civil rights (*e.g.*, Title VII claims), they have subjected themselves to a fee award under 42 U.S.C. section 1988, because section 1988 authorizes a fee award to defendants for Plaintiffs' frivolous charges.  *Fox v. Vice*, No. 10-114, 563 U.S. ___ , at 6–7 (June 6, 2011) (slip op.).  This remains true even "when a plaintiff's suit also includes non-frivolous claims," or where "a plaintiff's suit is not wholly frivolous."  *Id.* at 7.  Despite this generous standard, Plaintiffs' suit is indeed wholly frivolous given the assertion of claims unwarranted by the law and the total lack of evidentiary support for the listed claims.

Consequently, Defendants should be awarded fees and costs in defending themselves against this unreasonable, wholly vexatious, and frivolous Complaint.

<u>CONCLUSION</u>

Access to this Court is a right to all plaintiffs who can properly assert its jurisdiction.  Plaintiffs have abused that right.  They have lazily and haphazardly stitched together a series of claims that fail to survive even cursory scrutiny.  They have done so against a series of entities and individuals whose role in the alleged misdeeds Plaintiffs cannot even be bothered to explain, and whose presence in any event they cannot justify with the assertion of diversity jurisdiction.

This Court therefore, and for the reasons set forth above, should dismiss the Complaint in its entirety for lack of subject matter jurisdiction.  If it so chooses, this Court can also dismiss each and every cause of action for failure to state a claim.

In the alternative, this Court should order Plaintiffs to make a more definite statement, or should dismiss this case as having been brought in an improper venue.

Finally, this Court should award Defendants their reasonable attorney fees and costs to compensate them for the time and aggravation of this patently vexatious suit.

DATE: June 13, 2011

Respectfully submitted,

THOMPSON & KNIGHT, LLP

By: _____

    Paul H. Cohen
    Gabrielle Farina

900 Third Avenue, 20th Floor
New York, NY 10022-4728
Telephone: 212.751.3014
Facsimile: 214.999.1592

ATTORNEYS FOR DEFENDANTS
AMBIT ENERGY, L.P.;
AMBIT NEW YORK, LLC;
AMBIT HOLDINGS, LLC;
AMBIT GROUP, LP;
AMBIT TEXAS, LLC;
AMBIT ENERGY, LP;
AMBIT MARKETING, LP;
AMBIT GENPAR, INC.;
BLUEVISTA ENERGY, LLC;
AMBIT ENERGY HOLDINGS, LLC;
AMBIT SYSTEMS, INC.;
AMBIT NORTHEAST, LLC;
AMBIT ILLINOIS, LLC;
AMBIT PENNSYLVANIA, LLC;
GREENWAY HOLDINGS, LP;
AMBIT MANAGEMENT, INC.;
JERE W. THOMPSON, JR.;
CHRIS CHAMBLESS;
DARRELL STARKWEATHER;
JEFF HOEFKE;
JOHN BURKE; AND
CYNTHIA WILLIAMS YOUNG.

518218 000002 DALLAS 2752394.1