IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF THE STATE OF NEW YORK

| | | |
|---|---|---|
| BH SEVEN, LLC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 1:11-CV-02483 |
| | § | |
| AMBIT ENERGY, L.P., | § | |
| JERE W. THOMPSON, JR., AND | § | |
| CHRIS CHAMBLESS, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## DECLARATION OF STEPHEN C. RASCH

1.     My name is Stephen C. Rasch.  All the facts set forth in this Declaration are within my personal knowledge and are true and correct.

2.     I am an attorney at Thompson & Knight LLP, and I represent Defendants Ambit Energy, L.P., Jere W. Thompson, Jr., and Chris Chambless in this action.

3.     Attached to this Declaration are true and correct copies of the transcripts of the Pre-Motion Conference telephone hearings, dated June 30, 2011 and August 26, 2011 that our firm received from the official reporter of the court.

4.     I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED on October 18, 2011.

_____
STEPHEN C. RASCH

518218 000002 DALLAS 2796175.1

# JUNE TRANSCRIPT

JUNE 30, 2011

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X
NICOLE GUBIN AND BH SEVEN,      :   11-CV-2483(ARR)
LLC,                            :
                                :
        Plaintiffs,             :
                                :   United States Courthouse
      -against-                 :   Brooklyn, New York
                                :
                                :
                                :
                                :   Thursday, June 30, 2011
AMBIT NEW YORK, LLC, AMBIT      :   4:00
ENERGY FUNDING, LLC, AMBIT      :
HOLDINGS, LLC, ET AL,           :
                                :
        Defendants.             :
- - - - - - - - - - - - - - - - X

TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE CONFERENCE
BEFORE THE HONORABLE ALLYNE R. ROSS
UNITED STATES SENIOR DISTRICT JUDGE

A P P E A R A N C E S:

For the Plaintiffs:      LAW OFFICE OF FLORA RAINER, ESQ.
                         Attorney for the Plaintiffs -
                         Nicole Gubin and BH Seven, LLC
                            7234 73rd Street
                            Glendale, New York 11385
                         BY: FLORA RAINER, ESQ.


For the Defendants:      THOMPSON & KNIGHT, LLP
                         Attorneys for the Defendants -
                         Ambit New York, LLC, Ambit Energy
                         Funding, LLC, Ambit Holdings, LLC, et
                         al
                            919 Third Avenue
                            39th Floor
                            New York, New York 10022
                         BY: GABRIELLE ELISE FARINA, ESQ.

2

         A P P E A R A N C E S: (Continued.)

                    THOMPSON & KNIGHT, LLP
                    Attorneys for the Defendants -
                    Ambit New York, LLC, Ambit Energy
                    Funding, LLC, Ambit Holdings, LLC, et
                    al
                        1722 Routh Street
                        Suite 1500
                        Dallas, Texas 10022
                    BY: STEPHEN C. RASCH, ESQ.


Court Reporter:   Anthony D. Frisolone, FAPR, RDR, CRR, CRI
                  Official Court Reporter
                  Telephone: (718) 613-2487
                  Facsimile: (718) 613-2694
                  E-mail: Anthony_Frisolone@nyed.uscourts.gov


Proceedings recorded by computerized stenography.  Transcript
produced by Computer-aided Transcription.

Telephone Conference                                    3

1          (The following takes place in judge's chambers.)

2          (Parties appear via telephone.)

3          MS. RAINER:  Hello?

4          THE COURT:  Hello?  Ms. Rainer, are you on?

5          MS. RAINER:  Yes.

6          THE COURT:  Ms. Farina?

7          MS. FARINA:  Yes.

8          THE COURT:  And is it Mr. Rasch; is that correct?

9          MR. RASCH:  It is, your Honor.

10         THE COURT:  Okay.  And is that everybody?

11         MR. RASCH:  Yes, your Honor, on our side.

12         THE COURT:  Okay, that's fine.

13              Let me tell you that I have a court reporter

14    here who is taking the minutes of this proceeding and it

15    would greatly facilitate a clear transcript if you would

16    identify yourselves by name before you speak, all right?

17              I have read through the letters, plaintiff's

18    complaint, obviously, some of the other matters that were

19    presented last week and I've also read the attachment which

20    is defendant's motion.  I think we have some work to do in

21    this case.

22              Ms. Rainer, let me say that I think the

23    complaint presents a number of difficulties, one of which is

24    that I've had a hard time deciphering it.  But apart from

25    that, it appears to be inadequate in a number of respects

Telephone Conference                    4

1   that I want to discuss with you because what I would like to
2   do is give you an opportunity to replead your best and final
3   complaint.  I don't want to go through multiple motions with
4   leaves to amend, I just want to do it once.

5            So, on the understanding that I am granting
6   leave to amend right now, do you understand that this is the
7   last time, this will be your raft pleading, right?

8            MS. RAINER:  Your Honor, I understand.  But I have
9   a little bit of difficulty to consent that this would be a
10  final.  I would have liked to reserve my rights.

11           THE COURT:  In terms of the sufficiency of the
12  complaint, you know, it could be that if you go into
13  discovery near the end of discovery, you may discovery that
14  you had another cause of action to add to your complaint,
15  I'm not talking about that.  I'm talking about I don't want
16  it go through multiple rounds of pleading and repleading
17  just to get going.

18           MS. RAINER:  I understand.

19           THE COURT:  Okay.  That's fine.

20           Let me talk first about jurisdiction.  I
21  think that the defendants have a valid point that insofar as
22  you are seeking it, I don't know whether or not you are
23  relying on diversity jurisdiction, but if you are, it is not
24  sufficiently pleaded in this case.  Obviously, you do have
25  to look to each of the defendants individually and plead

Telephone Conference                         5

1   diversity individually.  You have partnerships and LLCs and

2   you don't know the citizenship of the members or partners.

3           So, if you want to plead diversity, you're

4   just going to have to tease it all out and plead it.

5           Do you understand?

6       MS. RAINER:  Yes.

7       THE COURT:  There is a lot of case law in this

8   district about how you go about doing that and it just has

9   to be done, so.

10          Insofar as you are asserting federal claims,

11  similarly to the defendant, I am assuming that you have made

12  four different assertions.  You have relied on the Federal

13  Trade Commission Act, 15 U.S.C. Section 45(a).  As far as I

14  know, there is no private right of action.

15          Now, I would suggest that you look into that

16  and if you're serious about that, then do something.  But,

17  if you're not satisfied that you have a good-faith basis to

18  plead a private right of action under the Federal Trade

19  Commission Act, I would strongly suggest that you not try

20  to.

21          When you refer to the Natural Gas Act, are

22  you talking about 15, United States Code, Section 717?  What

23  are you talking about?

24      MS. RAINER:  I believe possibly, I don't have the

25  whole file in front of me, I just took a break from a

Telephone Conference                                6

1    deposition to make this call and I don't have the file in

2    front of me.  I would have quoted it, I believe.

3              THE COURT:  No, there is nothing quoted.

4              MS. RAINER:  Okay.

5              THE COURT:  There's not even a statute cited, so

6    we tried to figure out what you meant.

7                    Now, we thought maybe you meant 15,

8    United States Code, Section 717.  I don't know if that's

9    what you intended, but even if you did, there's -- I don't

10   believe there's a private right of action under that either

11   so, I want you to look very carefully.

12                   You're going to have to really dissect your

13   pleading yourself and put it back together in a way that

14   we'll be able to deal with it.

15                   The third potential federal action is the

16   RICO, that does not begin to plead a RICO.  There is many,

17   many things that must be plead in order to satisfy the RICO

18   statute and that's something that you're going to have to

19   look into independently.

20                   There are some things that lead me to believe

21   perhaps that you would never be able to plead a RICO, one of

22   which is I don't think you can plead any RICO predicate.

23   Somewhere else in your complaint, you refer to -- you don't

24   directly refer to wire fraud as a RICO predicate, let me

25   assume that that's what you intended.  But you have to go to

1    the RICO statute, you have to sufficiently plead facts that

2    would support all of the elements of a RICO claim, and you

3    would have to sufficiently plead if it's wire fraud or if

4    it's mail fraud, whatever it is the elements of that.

5              One of the problems that I see with your

6    pleading is that it seems that each claim of fraud is a

7    claim that is intrinsic to the contract, not extrinsic to

8    the contract and that will not be sufficient when

9    essentially what you're saying is you were defrauded because

10   somebody breached the contract in a certain way that's not a

11   fraud, that's a breach of contract.

12             So, I think you're going to have to look very

13   closely at that, too, because that would eliminate even

14   common law fraud.

15             As to your employment discrimination,

16   assuming it's a Title VII claim, you have actually, I mean,

17   in my mind, your complaint pleads that you are a consultant

18   which, by definition, is not an employee.

19             Now, I don't know whether you have facts that

20   would establish that you are an employee as distinguished

21   from an independent contractor but particularly, in light of

22   the relationship as you've set it forth in the existing

23   pleading, you're going to have to plead a sufficient factual

24   basis to lead to the plausible conclusion that you may be an

25   employee as distinguished from an independent contractor.

Telephone Conference                        8

1              But you have called the relationship, the

2    relationship as one of a consultant and described it in a

3    way that it's hard to imagine that either you, either

4    Ms. Rubin or her corporation that she created, to do this is

5    the employee of the defendant.  So, that's another problem

6    that I think you're going to have to address.

7              Let me ask you this, it's not even entirely

8    clear what this contract is.

9              Is this an oral contract?

10             MS. FARINA:  Hello.

11             THE COURT:  Do we still have everybody?

12             MR. RASCH:  Judge, this is Steve Rasch, I think

13   that my colleague in New York, Gabrielle Farina, just

14   dropped off.  I know that was unintentional.  We can

15   continue the conference because I'm still on and hopefully

16   Gabrielle can dial back in.

17             THE COURT:  Ms. Rainer, is the contract a written

18   contract or an oral contract?

19             MS. RAINER:  It's a written contract.  It's a

20   written contract that's done online over the Internet.

21             THE COURT:  Okay.  But you can get a copy of that

22   and attach that to your amended pleading, I assume?

23             MS. RAINER:  Yes.

24             THE COURT:  Okay.  Well, I mean, assuming we get

25   past all these other --

1          MS. FARINA:  I apologize, your Honor.  I lost the

2    call somehow.

3          THE COURT:  I understand.  I just -- the only

4    thing that's gone on your absence is I ascertained from

5    Ms. Rainer is that the contract is a written contract

6    obtained from the Internet, it is not an oral contract and

7    Ms. Rainer presumably, if there is a repleading, will be

8    attaching that to the repleading so we will know what the

9    contract is.

10             I guess that raises the question to me that

11   defendants can answer is that the contract you were

12   referring to when you said there was a forum selection

13   clause?

14         MR. RASCH:  Yes, your Honor there is a forum

15   selection clause and there is also a mandatory arbitration

16   clause.

17             And, your Honor, you may or may not want us

18   to get into this at this point, but from our standpoint,

19   there are many aspects of this pleading that I would

20   characterize as reckless including the inclusion of a whole

21   number of parties that couldn't have any conceivable

22   connection to this case.

23             One example being the Trinity River

24   Commission Foundation, Inc., which is a nonprofit

25   organization that the president of Ambit served on a number

1    of years ago.  That has to do with a river that is located

2    in the Dallas area that has no conceivable connection to

3    Ambit or Ms. Rainer's client.  And it appears to me that

4    there was just a Google search done and any organization

5    that showed Jerry Thompson was named in this complaint.

6         THE COURT:  Ms. Rainer, let me simply say I don't

7    know whether or not what Mr. Rasch has just said is

8    perfectly accurate or not but I am asking that you will

9    clean up this pleading in every way and take Rule 11

10   seriously, okay?  And that's both in terms of your causes of

11   action, in terms of your defendant, in terms of your basis

12   of jurisdiction, in terms of the facts supporting any claim

13   that you make.

14        I am concerned, if you're relying on a

15   contract that has an arbitration selection and a forum

16   selection clause, that leads me to wonder honestly whether

17   this is something you should seriously consider before you

18   replead here or perhaps what you want to do is narrow your

19   complaint down to whatever it really is and bring it in the

20   appropriate forum to begin with so you don't end up doing

21   unnecessary litigation in the Eastern District of New York.

22        I'm not asking you to answer any of these

23   questions right now, I'm just putting all of them out there.

24   It may be that what your lawsuit really is, is a limited

25   one, doesn't have 12 causes of action, maybe it has one or

Case 1:11-cv-02483-ARR-RER   Document 29-2   Filed 12/02/11   Page 14 of 74 PageID #: 448

1    two causes of action and there may be another place where

2    you have to be, not here.

3              I am also concerned about your including

4    defendants who have nothing to do with the case.  And let me

5    also say in addition to that, I mean, even the state law

6    claims are insufficiently pleaded, all of them.  The breach

7    of contract, the fraud, the libel and slander.

8              What you really -- you ought to decide what

9    your lawsuit is about or what your actual claim really is

10   and decide where it ought to be brought.  And you know, I

11   leave you free to do whatever you deem to be appropriate

12   there, obviously, but I am concerned.  I mean, there could

13   be repercussions if you don't do your very best to adhere to

14   that.

15             In any event, beyond that, it's not clear to

16   me what to say.  I think you ought to start from scratch and

17   just making it long won't do it.  You've got to determine

18   whether this court has jurisdiction and what the basis of

19   that is and plead everything that needs to be pleaded to

20   ensure that you're going to have jurisdiction in this court.

21   You're going to need to be sure whether you're in the right

22   forum because if, in fact, your contract is restricted by a

23   forum selection clause and an arbitration clause, you're

24   going to have a problem.

25             But if you are in the right forum, you're

Telephone Conference                    12

1   going to have to plead not only the jurisdictional bases but

2   you're going to have to look at each cause of action you

3   actually decide to assert, look at the elements of any one

4   claim, be absolutely certain that you have factually pleaded

5   the existence of each element.

6          You can't just plead a conclusory element,

7   you have to plead the facts.  I don't know if I've been

8   clear or if you have any questions, but what I want you to

9   do is just take some time and do it right or choose not to

10  do it here, choose to do it another way.

11         Now, how long would you like to do that?

12         MS. RAINER:  I am going away on vacation for the

13  next two weeks, I would like until July 22nd.

14         THE COURT:  That's fine.  I'm going to give you as

15  much time as you want because I think it's important for you

16  to do this right.  As far as I am concerned, this is the

17  last pleading, you understand?

18         MS. RAINER:  Yes, I understand.

19         THE COURT:  Okay.  Well, then, it is possible that

20  you will be filing on or before July 22nd, or if you decide

21  you're going to decide to do something different for

22  whatever reason, and I really don't know the merits of

23  anything at this point as everybody knows, but if you decide

24  to do something different would you let us know sooner than

25  that date that you would not be filing the suit.

Telephone Conference                              13

1          MS. RAINER:  Or if I need an extension.

2          THE COURT:  Or if you need an extension I will

3    give you an extension.

4          MS. RAINER:  Thank you, your Honor.

5              I did see the contract.  I believe that there

6    are issues that can, that will result in the staying in the

7    Eastern District especially with the high-tech technology,

8    how things are done through Internet, and I just believe

9    that there are issues.

10         THE COURT:  Well, let me simply say whatever those

11   issues, I want you to be certain that you understand that it

12   is your responsibility to research those issues and be sure

13   that you have a clear legal argument before you do it, okay?

14         MS. RAINER:  Yes.

15         THE COURT:  All right.  Then I'm going to

16   anticipate that we'll get a pleading from you by July 22nd.

17   If you need more time, let me know, I'm happy to give it to

18   you.  And if you choose not to do that, we will hear from

19   you that you're not going to pursue it here but that you're

20   going to pursue it elsewhere, okay?

21         MS. RAINER:  Yes, your Honor.

22         THE COURT:  Is there anything else?

23         MR. RASCH:  Your Honor, may I raise one thing?

24         THE COURT:  Yes.

25         MR. RASCH:  Very shortly before this call began,

1   we received an ECF notice of another pleading apparently

2   filed by Ms. Rainer's and the ECF notice, the docket text

3   says, "Motion for Order to Show Cause, motion for Temporary

4   Restraining Order."  It says, "Awaiting counsel to e-mail

5   the document, too large to scan."  I don't know what this

6   pleading is.

7           THE COURT:  Ms. Rainer's had filed a motion for a

8   Temporary Restraining Order and a Preliminary Injunction on

9   Friday which I denied so that's what that is.

10          MR. RASCH:  I'm sorry, your Honor, a week last.

11          THE COURT:  This past Friday.

12          MR. RASCH:  Okay.  We were never served with that.

13          THE COURT:  I know, because it was ex parte.  But

14  it will be in the court file and I don't know quite what

15  else to say.  There's no reason for you not to have it but

16  it was denied.

17          MR. RASCH:  Sure, okay, your Honor.  Just so I

18  understand, there's nothing that we need to respond to at

19  this point?

20          THE COURT:  There is nothing you need to respond

21  to at this point, we don't have a complaint.

22          MR. RASCH:  I wanted to get that clarification

23  just because we received ECF notices and we didn't know what

24  it was.

25          THE COURT:  I hadn't seen it but that's what it

1   was.  There was a TRO, and Motion For Preliminary Injunction

2   filed and that was it.  There was a handwritten notation on

3   the motion that denied the motion.

4            MR. RASCH:  Sure.  Thank you, your Honor.

5            MS. RAINER:  For some reason, I did not receive

6   the notice for ECF, I'm not sure why.  Maybe somehow I

7   didn't see it.

8            THE COURT:  I don't know, Ms. Rainer's, I haven't

9   looked for it.  If it came to Mr. Rasch, I'm not sure why it

10  didn't come to you.  I can look at the docket number right

11  now and see if I see anything.

12           MR. RASCH:  The notice, your Honor, of the filing

13  of the motion came to us about three minutes before this

14  call was scheduled to begin and I see now that while this

15  call was in progress I did get the Court's order with the

16  handwritten note.  So, it literally came in the last few

17  minutes.

18           THE COURT:  So, I'm sure, Ms. Rainer's, that you

19  got it, too, it just happened okay?

20           MS. RAINER:  Okay.

21           THE COURT:  If it's gotten to your adversary it

22  should have gotten to you.

23           MS. RAINER:  Okay.

24           THE COURT:  And if you have any problem, call the

25  clerk's office or whatever.  But I'm assuming it's got to be

Case 1:11-cv-02483-ARR-RER  Document 29-2  Filed 12/02/11  Page 19 of 74 PageID #: 453

1    on ECF.

2              MS. RAINER:  Okay.

3              THE COURT:  Okay.

4              All right.  If no one has anything else,

5    we'll leave it here.  If, Ms. Rainer's or Mr. Rasch, if you

6    want a copy of the minutes, I will put the court reporter

7    on.

8              Does anybody want it at this point or are you

9    going to order at a later time if you wish?

10             MR. RASCH:  This is Steve Rasch.

11             We would like a copy of the minutes and we

12   would like to take the opportunity to speak to the court

13   reporter.

14             THE COURT:  He will get all the information from

15   you, okay?

16             MR. RASCH:  Sure.

17             (WHEREUPON, the proceedings were adjourned.)

18

19                        *   *   *

20             <u>CERTIFICATE OF REPORTER</u>

21

      I certify that the foregoing is a correct transcript of the
22        record of proceedings in the above-entitled matter.

23

24   _____

25   Anthony D. Frisolone, FAPR, RDR, CRR, CRI
     Official Court Reporter

## 1

**10022** [2] - 1:21, 2:5
**11** [1] - 10:9
**11-CV-2483(ARR** [1] - 1:3
**11385** [1] - 1:16
**12** [1] - 10:25
**15** [3] - 5:13, 5:22, 6:7
**1500** [1] - 2:5
**1722** [1] - 2:4

## 2

**2011** [1] - 1:7
**22nd** [3] - 12:13, 12:20, 13:16

## 3

**30** [1] - 1:7
**39th** [1] - 1:21

## 4

**45(a)** [1] - 5:13
**4:00** [1] - 1:8

## 6

**613-2487** [1] - 2:8
**613-2694** [1] - 2:9

## 7

**717** [2] - 5:22, 6:8
**718** [2] - 2:8, 2:9
**7234** [1] - 1:16
**73rd** [1] - 1:16

## 9

**919** [1] - 1:20

## A

**able** [2] - 6:14, 6:21
**above-entitled** [1] - 16:22
**absence** [1] - 9:4
**absolutely** [1] - 12:4
**accurate** [1] - 10:8
**Act** [3] - 5:13, 5:19, 5:21
**action** [9] - 4:14, 5:14, 5:18, 6:10, 6:15, 10:11, 10:25, 11:1, 12:2
**actual** [1] - 11:9
**add** [1] - 4:14
**addition** [1] - 11:5
**address** [1] - 8:6
**adhere** [1] - 11:13
**adjourned** [1] - 16:17
**adversary** [1] - 15:21
**ago** [1] - 10:1

**aided** [1] - 2:11
**AL** [1] - 1:9
**al** [2] - 1:20, 2:4
**ALLYNE** [1] - 1:12
**AMBIT** [3] - 1:8, 1:8
**Ambit** [8] - 1:19, 1:19, 2:3, 2:3, 9:25, 10:3
**amend** [2] - 4:4, 4:6
**amended** [1] - 8:22
**AND** [1] - 1:3
**answer** [2] - 9:11, 10:22
**Anthony** [2] - 2:7, 16:25
**anthony_Frisolone@nyed.uscourts. gov** [1] - 2:9
**anticipate** [1] - 13:16
**apart** [1] - 3:24
**apologize** [1] - 9:1
**appear** [1] - 3:2
**appropriate** [2] - 10:20, 11:11
**arbitration** [3] - 9:15, 10:15, 11:23
**area** [1] - 10:2
**argument** [1] - 13:13
**ascertained** [1] - 9:4
**aspects** [1] - 9:19
**assert** [1] - 12:3
**asserting** [1] - 5:10
**assertions** [1] - 5:12
**assume** [2] - 6:25, 8:22
**assuming** [4] - 5:11, 7:16, 8:24, 15:25
**attach** [1] - 8:22
**attaching** [1] - 9:8
**attachment** [1] - 3:19
**Attorney** [1] - 1:15
**Attorneys** [2] - 1:18, 2:2
**Awaiting** [1] - 14:4

## B

**bases** [1] - 12:1
**basis** [4] - 5:17, 7:24, 10:11, 11:18
**BEFORE** [1] - 1:12
**began** [1] - 13:25
**begin** [3] - 6:16, 10:20, 15:14
**best** [2] - 4:2, 11:13
**beyond** [1] - 11:15
**BH** [2] - 1:3, 1:15
**bit** [1] - 4:9
**breach** [2] - 7:11, 11:6
**breached** [1] - 7:10
**break** [1] - 5:25
**bring** [1] - 10:19
**Brooklyn** [1] - 1:5
**brought** [1] - 11:10
**BY** [3] - 1:17, 1:22, 2:6

## C

**carefully** [1] - 6:11
**case** [5] - 3:21, 4:24, 5:7, 9:22, 11:4
**CAUSE** [1] - 1:11
**causes** [3] - 10:10, 10:25, 11:1
**certain** [3] - 7:10, 12:4, 13:11
**CERTIFICATE** [1] - 16:20

**certify** [1] - 16:21
**chambers** [3] - 3:1
**characterize** [1] - 9:20
**choose** [3] - 12:9, 12:10, 13:18
**cited** [1] - 6:5
**citizenship** [1] - 5:2
**CIVIL** [1] - 1:11
**claim** [7] - 7:2, 7:6, 7:7, 7:16, 10:12, 11:9, 12:4
**claims** [2] - 5:10, 11:6
**clarification** [1] - 14:22
**clause** [6] - 9:13, 9:15, 9:16, 10:16, 11:23
**clean** [1] - 10:9
**clear** [5] - 3:15, 8:8, 11:15, 12:8, 13:13
**clerk's** [1] - 15:25
**client** [1] - 10:3
**closely** [1] - 7:13
**Code** [2] - 5:22, 6:8
**colleague** [1] - 8:13
**Commission** [3] - 5:13, 5:19, 9:24
**common** [1] - 7:14
**complaint** [10] - 3:18, 3:23, 4:3, 4:12, 4:14, 6:23, 7:17, 10:5, 10:19, 14:21
**Computer** [1] - 2:11
**Computer-aided** [1] - 2:11
**computerized** [1] - 2:10
**conceivable** [2] - 9:21, 10:2
**concerned** [4] - 10:14, 11:3, 11:12, 12:16
**conclusion** [1] - 7:24
**conclusory** [1] - 12:6
**CONFERENCE** [1] - 1:11
**conference** [1] - 8:15
**connection** [2] - 9:22, 10:2
**consent** [1] - 4:9
**consider** [1] - 10:17
**consultant** [2] - 7:17, 8:2
**continue** [1] - 8:15
**continued** [1] - 2:1
**contract** [20] - 7:7, 7:8, 7:10, 7:11, 8:8, 8:9, 8:17, 8:18, 8:19, 8:20, 9:5, 9:6, 9:9, 9:11, 10:15, 11:7, 11:22, 13:5
**contractor** [2] - 7:21, 7:25
**copy** [3] - 8:21, 16:6, 16:11
**corporation** [1] - 8:4
**correct** [2] - 3:8, 16:21
**counsel** [1] - 14:4
**court** [6] - 3:13, 11:18, 11:20, 14:14, 16:6, 16:12
**Court** [3] - 2:7, 2:8, 16:25
**Court's** [1] - 15:15
**Courthouse** [1] - 1:5
**created** [1] - 8:4
**CRI** [2] - 2:7, 16:25
**CRR** [2] - 2:7, 16:25

## D

**Dallas** [2] - 2:5, 10:2
**date** [1] - 12:25
**deal** [1] - 6:14
**decide** [6] - 11:8, 11:10, 12:3, 12:20, 12:21, 12:23

1

**2**

deciphering [1] - 3:24
deem [1] - 11:11
defendant [1] - 10:11
defendant's [1] - 3:20
defendants [5] - 1:10, 4:21, 4:25, 9:11, 11:4
Defendants [3] - 1:18, 1:18, 2:2
definition [1] - 7:18
defrauded [1] - 7:9
denied [3] - 14:9, 14:16, 15:3
deposition [1] - 6:1
described [1] - 8:2
determine [1] - 11:17
dial [1] - 8:16
different [3] - 5:12, 12:21, 12:24
difficulties [1] - 3:23
difficulty [1] - 4:9
directly [1] - 6:24
discovery [3] - 4:13
discrimination [1] - 7:15
discuss [1] - 4:1
dissect [1] - 6:12
distinguished [2] - 7:20, 7:25
District [2] - 10:21, 13:7
DISTRICT [3] - 1:1, 1:1, 1:12
district [1] - 5:8
diversity [3] - 4:23, 5:1, 5:3
docket [2] - 14:2, 15:10
document [1] - 14:5
done [4] - 5:9, 8:20, 10:4, 13:8
down [1] - 10:19
dropped [1] - 8:14

**E**

E-mail [1] - 2:9
e-mail [1] - 14:4
EASTERN [1] - 1:1
Eastern [2] - 10:21, 13:7
ECF [5] - 14:1, 14:2, 14:23, 15:6, 16:1
either [3] - 6:10, 8:3
element [2] - 12:5, 12:6
elements [3] - 7:2, 7:4, 12:3
eliminate [1] - 7:13
ELISE [1] - 1:22
elsewhere [1] - 13:20
employee [4] - 7:18, 7:20, 7:25, 8:5
employment [1] - 7:15
end [2] - 4:13, 10:20
ENERGY [1] - 1:8
Energy [2] - 1:19, 2:3
ensure [1] - 11:20
entirely [1] - 8:7
entitled [1] - 16:22
especially [1] - 13:7
ESQ [4] - 1:14, 1:17, 1:22, 2:6
essentially [1] - 7:9
establish [1] - 7:20
et [2] - 1:19, 2:3
ET [1] - 1:9
event [1] - 11:15
ex [1] - 14:13
example [1] - 9:23
existence [1] - 12:5

existing [1] - 7:22
extension [3] - 13:1, 13:2, 13:3
extrinsic [1] - 7:7

**F**

facilitate [1] - 3:15
Facsimile [1] - 2:9
fact [1] - 11:22
facts [4] - 7:1, 7:19, 10:12, 12:7
factual [1] - 7:23
factually [1] - 12:4
faith [1] - 5:17
FAPR [2] - 2:7, 16:25
far [2] - 5:13, 12:16
FARINA [4] - 1:22, 3:7, 8:10, 9:1
Farina [2] - 3:6, 8:13
federal [2] - 5:10, 6:15
Federal [2] - 5:12, 5:18
few [1] - 15:16
figure [1] - 6:6
file [3] - 5:25, 6:1, 14:14
filed [3] - 14:2, 14:7, 15:2
filing [3] - 12:20, 12:25, 15:12
final [2] - 4:2, 4:10
fine [3] - 3:12, 4:19, 12:14
first [1] - 4:20
Floor [1] - 1:21
FLORA [2] - 1:14, 1:17
following [1] - 3:1
FOR [1] - 1:11
foregoing [1] - 16:21
forth [1] - 7:22
forum [7] - 9:12, 9:14, 10:15, 10:20, 11:22, 11:23, 11:25
Foundation [1] - 9:24
four [1] - 5:12
fraud [7] - 6:24, 7:3, 7:4, 7:6, 7:11, 7:14, 11:7
free [1] - 11:11
Friday [2] - 14:9, 14:11
Frisolone [2] - 2:7, 16:25
front [2] - 5:25, 6:2
FUNDING [1] - 1:8
Funding [2] - 1:19, 2:3

**G**

Gabrielle [2] - 8:13, 8:16
GABRIELLE [1] - 1:22
Gas [1] - 5:21
Glendale [1] - 1:16
good-faith [1] - 5:17
Google [1] - 10:4
granting [1] - 4:5
greatly [1] - 3:15
GUBIN [1] - 1:3
Gubin [1] - 1:15
guess [1] - 9:10

**H**

handwritten [2] - 15:2, 15:16

happy [1] - 13:17
hard [2] - 3:24, 8:3
hear [1] - 13:18
hello [3] - 3:3, 3:4, 8:10
high [1] - 13:7
high-tech [1] - 13:7
HOLDINGS [1] - 1:9
Holdings [2] - 1:19, 2:3
honestly [1] - 10:16
Honor [13] - 3:9, 3:11, 4:8, 9:1, 9:14, 9:17, 13:4, 13:21, 13:23, 14:10, 14:17, 15:4, 15:12
HONORABLE [1] - 1:12
hopefully [1] - 8:15

**I**

identify [1] - 3:16
imagine [1] - 8:3
important [1] - 12:15
inadequate [1] - 3:25
Inc [1] - 9:24
including [2] - 9:20, 11:3
inclusion [1] - 9:20
independent [2] - 7:21, 7:25
independently [1] - 6:19
individually [2] - 4:25, 5:1
information [1] - 16:14
Injunction [2] - 14:8, 15:1
insofar [2] - 4:21, 5:10
Insufficiently [1] - 11:6
Intended [2] - 6:9, 6:25
Internet [3] - 8:20, 9:6, 13:8
intrinsic [1] - 7:7
issues [4] - 13:6, 13:9, 13:11, 13:12

**J**

Jerry [1] - 10:5
JUDGE [1] - 1:12
judge [1] - 8:12
judge's [1] - 3:1
July [3] - 12:13, 12:20, 13:16
June [1] - 1:7
jurisdiction [5] - 4:20, 4:23, 10:12, 11:18, 11:20
jurisdictional [1] - 12:1

**K**

KNIGHT [2] - 1:18, 2:2
knows [1] - 12:23

**L**

large [1] - 14:5
last [5] - 3:19, 4:7, 12:17, 14:10, 15:16
LAW [1] - 1:14
law [3] - 5:7, 7:14, 11:5
lawsuit [2] - 10:24, 11:9
lead [2] - 6:20, 7:24
leads [1] - 10:16

leave [3] - 4:6, 11:11, 16:5
leaves [1] - 4:4
legal [1] - 13:13
letters [1] - 3:17
libel [1] - 11:7
light [1] - 7:21
limited [1] - 10:24
literally [1] - 15:16
litigation [1] - 10:21
LLC [11] - 1:3, 1:8, 1:8, 1:9, 1:15, 1:19, 1:19, 2:3, 2:3
LLCs [1] - 5:1
LLP [2] - 1:18, 2:2
located [1] - 10:1
look [8] - 4:25, 5:15, 6:11, 6:19, 7:12, 12:2, 12:3, 15:10
looked [1] - 15:9
lost [1] - 9:1

**M**

mail [3] - 2:9, 7:4, 14:4
mandatory [1] - 9:15
matter [1] - 16:22
matters [1] - 3:18
mean [4] - 7:16, 8:24, 11:5, 11:12
meant [2] - 6:6, 6:7
members [1] - 5:2
merits [1] - 12:22
mind [1] - 7:17
minutes [5] - 3:14, 15:13, 15:17, 16:6, 16:11
Motion [2] - 14:3, 15:1
motion [6] - 3:20, 14:3, 14:7, 15:3, 15:13
motions [1] - 4:3
MS [22] - 3:3, 3:5, 3:7, 4:8, 4:18, 5:6, 5:24, 6:4, 8:10, 8:19, 8:23, 9:1, 12:12, 12:18, 13:1, 13:4, 13:14, 13:21, 15:5, 15:20, 15:23, 16:2
multiple [2] - 4:3, 4:16
must [1] - 6:17

**N**

name [1] - 3:16
named [1] - 10:5
narrow [1] - 10:18
Natural [1] - 5:21
near [1] - 4:13
need [6] - 11:21, 13:1, 13:2, 13:17, 14:18, 14:20
needs [1] - 11:19
never [2] - 6:21, 14:12
NEW [2] - 1:1, 1:8
New [8] - 1:5, 1:16, 1:19, 1:21, 2:3, 8:13, 10:21
next [1] - 12:13
NICOLE [1] - 1:3
Nicole [1] - 1:15
nonprofit [1] - 9:24
notation [1] - 15:2
note [1] - 15:16
nothing [4] - 6:3, 11:4, 14:18, 14:20

notice [4] - 14:1, 14:2, 15:6, 15:12
notices [1] - 14:23
number [5] - 3:23, 3:25, 9:21, 9:25, 15:10

**O**

obtained [1] - 9:6
obviously [3] - 3:18, 4:24, 11:12
OF [4] - 1:1, 1:11, 1:14, 16:20
office [1] - 15:25
OFFICE [1] - 1:14
Official [2] - 2:8, 16:25
once [1] - 4:4
one [10] - 3:23, 6:21, 7:5, 8:2, 9:23, 10:25, 12:3, 13:23, 13:23, 16:4
online [1] - 8:20
opportunity [2] - 4:2, 16:12
oral [3] - 8:9, 8:18, 9:6
order [3] - 6:17, 15:15, 16:9
Order [3] - 14:3, 14:4, 14:8
organization [2] - 9:25, 10:4
ought [3] - 11:8, 11:10, 11:16

**P**

parte [1] - 14:13
particularly [1] - 7:21
parties [1] - 9:21
Parties [1] - 3:2
partners [1] - 5:2
partnerships [1] - 5:1
past [2] - 8:25, 14:11
perfectly [1] - 10:8
perhaps [2] - 6:21, 10:18
place [2] - 3:1, 11:1
plaintiff's [1] - 3:17
Plaintiffs [3] - 1:4, 1:14, 1:15
plausible [1] - 7:24
plead [16] - 4:25, 5:3, 5:4, 5:18, 6:16, 6:17, 6:21, 6:22, 7:1, 7:3, 7:23, 11:19, 12:1, 12:6, 12:7
pleaded [4] - 4:24, 11:6, 11:19, 12:4
pleading [12] - 4:7, 4:16, 6:13, 7:6, 7:23, 8:22, 9:19, 10:9, 12:17, 13:16, 14:1, 14:6
pleads [1] - 7:17
point [6] - 4:21, 9:18, 12:23, 14:19, 14:21, 16:8
possible [1] - 12:19
possibly [1] - 5:24
potential [1] - 6:15
predicate [2] - 6:22, 6:24
Preliminary [2] - 14:8, 15:1
presented [1] - 3:19
presents [1] - 3:23
president [1] - 9:25
presumably [1] - 9:7
private [3] - 5:14, 5:18, 6:10
problem [3] - 8:5, 11:24, 15:24
problems [1] - 7:5
proceeding [1] - 3:14
Proceedings [1] - 2:10
proceedings [2] - 16:17, 16:22

produced [1] - 2:11
progress [1] - 15:15
pursue [2] - 13:19, 13:20
put [2] - 6:13, 16:6
putting [1] - 10:23

**Q**

questions [2] - 10:23, 12:8
quite [1] - 14:14
quoted [2] - 6:2, 6:3

**R**

raft [1] - 4:7
RAINER [21] - 1:14, 1:17, 3:3, 3:5, 4:8, 4:18, 5:6, 5:24, 6:4, 8:19, 8:23, 12:12, 12:18, 13:1, 13:4, 13:14, 13:21, 15:5, 15:20, 15:23, 16:2
Rainer [6] - 3:4, 3:22, 8:17, 9:5, 9:7, 10:6
Rainer's [6] - 10:3, 14:2, 14:7, 15:8, 15:18, 16:5
raise [1] - 13:23
raises [1] - 9:10
RASCH [15] - 2:6, 3:9, 3:11, 8:12, 9:14, 13:23, 13:25, 14:10, 14:12, 14:17, 14:22, 15:4, 15:12, 16:10, 16:16
Rasch [6] - 3:8, 8:12, 10:7, 15:9, 16:5, 16:10
RDR [2] - 2:7, 16:25
read [2] - 3:17, 3:19
really [6] - 6:12, 10:19, 10:24, 11:8, 11:9, 12:22
reason [3] - 12:22, 14:15, 15:5
receive [1] - 15:5
received [2] - 14:1, 14:23
reckless [1] - 9:20
record [1] - 16:22
recorded [2] - 2:10
refer [3] - 5:21, 6:23, 6:24
referring [1] - 9:12
relationship [3] - 7:22, 8:1, 8:2
relied [1] - 5:12
relying [2] - 4:23, 10:14
repercussions [1] - 11:13
replead [2] - 4:2, 10:18
repleading [4] - 4:16, 9:7, 9:8
REPORTER [1] - 16:20
Reporter [3] - 2:7, 2:8, 16:25
reporter [3] - 3:13, 16:6, 16:13
research [1] - 13:12
reserve [1] - 4:10
respects [1] - 3:25
respond [2] - 14:18, 14:20
responsibility [1] - 13:12
Restraining [2] - 14:4, 14:8
restricted [1] - 11:22
result [1] - 13:6
RICO [8] - 6:16, 6:17, 6:21, 6:22, 6:24, 7:1, 7:2
rights [1] - 4:10
River [1] - 9:23
river [1] - 10:1

3

**ROSS** [1] - 1:12
**rounds** [1] - 4:16
**Routh** [1] - 2:4
**Rubin** [1] - 8:4
**Rule** [1] - 10:9

## S

**satisfied** [1] - 5:17
**satisfy** [1] - 6:17
**scan** [1] - 14:5
**scheduled** [1] - 15:14
**scratch** [1] - 11:16
**search** [1] - 10:4
**Section** [3] - 5:13, 5:22, 6:8
**see** [6] - 7:5, 13:5, 15:7, 15:11, 15:14
**seeking** [1] - 4:22
**selection** [5] - 9:12, 9:15, 10:15, 10:16, 11:23
**SENIOR** [1] - 1:12
**serious** [1] - 5:16
**seriously** [2] - 10:10, 10:17
**served** [2] - 9:25, 14:12
**set** [1] - 7:22
**SEVEN** [1] - 1:3
**Seven** [1] - 1:15
**shortly** [1] - 13:25
**Show** [1] - 14:3
**showed** [1] - 10:5
**side** [1] - 3:11
**similarly** [1] - 5:11
**simply** [2] - 10:6, 13:10
**slander** [1] - 11:7
**somewhere** [1] - 6:23
**sooner** [1] - 12:24
**sorry** [1] - 14:10
**standpoint** [1] - 9:18
**start** [1] - 11:16
**state** [1] - 11:5
**statute** [3] - 6:5, 6:18, 7:1
**staying** [1] - 13:6
**stenography** [1] - 2:10
**STEPHEN** [1] - 2:6
**Steve** [2] - 8:12, 16:10
**still** [2] - 8:11, 8:15
**Street** [2] - 1:16, 2:4
**strongly** [1] - 5:19
**sufficiency** [1] - 4:11
**sufficient** [2] - 7:8, 7:23
**sufficiently** [3] - 4:24, 7:1, 7:3
**suggest** [2] - 5:15, 5:19
**suit** [1] - 12:25
**Suite** [1] - 2:5
**support** [1] - 7:2
**supporting** [1] - 10:12

## T

**tease** [1] - 5:4
**tech** [1] - 13:7
**technology** [1] - 13:7
**TELEPHONE** [1] - 1:11
**Telephone** [1] - 2:8

**telephone** [1] - 3:2
**Temporary** [2] - 14:3, 14:8
**terms** [5] - 4:11, 10:10, 10:11, 10:12
**Texas** [1] - 2:5
**text** [1] - 14:2
**the defendant** [2] - 5:11, 8:5
**third** [1] - 6:15
**Third** [1] - 1:20
**Third Avenue** [1] - 1:20
**Thompson** [1] - 10:5
**THOMPSON** [2] - 1:18, 2:2
**three** [1] - 15:13
**Thursday** [1] - 1:7
**Title** [1] - 7:16
**together** [1] - 6:13
**took** [1] - 5:25
**Trade** [2] - 5:13, 5:18
**transcript** [2] - 3:15, 16:21
**Transcript** [1] - 2:10
**TRANSCRIPT** [1] - 1:11
**Transcription** [1] - 2:11
**tried** [1] - 6:6
**Trinity** [1] - 9:23
**TRO** [1] - 15:1
**try** [1] - 5:19
**two** [2] - 11:1, 12:13

## U

**U.S.C** [1] - 5:13
**under** [2] - 5:18, 6:10
**unintentional** [1] - 8:14
**United States** [5] - 1:1, 1:5, 1:12, 5:22, 6:8
**unnecessary** [1] - 10:21
**up** [2] - 10:9, 10:20

## V

**vacation** [1] - 12:12
**valid** [1] - 4:21
**via** [1] - 3:2
**VII** [1] - 7:16

## W

**week** [2] - 3:19, 14:10
**weeks** [1] - 12:13
**WHEREUPON** [1] - 16:17
**whole** [2] - 5:25, 9:20
**wire** [2] - 6:24, 7:3
**wish** [1] - 16:9
**wonder** [1] - 10:16
**written** [4] - 8:17, 8:19, 8:20, 9:5

## Y

**years** [1] - 10:1
**YORK** [2] - 1:1, 1:8
**York** [8] - 1:5, 1:16, 1:19, 1:21, 2:3, 8:13, 10:21
**yourself** [1] - 6:13
**yourselves** [1] - 3:16

# AUGUST TRANSCRIPT

AUGUST 26, 2011

1

1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
2
    - - - - - - - - - - - - - - X
3                                :
    GUBIN,                       :
4                                :        11-CV-2483
                Plaintiff,   :
5
        -against-               :
6                                :        United States Courthouse
7   AMBIT ENERGY, L.P., et al, :        Brooklyn, New York
8               Defendants. :
                                 :        August 26, 2011
9   - - - - - - - - - - - - - - X        12:00 p.m.

10

11                    TRANSCRIPT OF STATUS CONFERENCE
                     BEFORE THE HONORABLE ALLYNE ROSS
                     UNITED STATES DISTRICT SENIOR JUDGE
12
    APPEARANCES:
13
    For the Plaintiff:     FLORA RAINER, ESQ.
14

15  For the Defendants:    THOMPSON & KNIGHT, LLP
                           BY:  STEPHEN C. RASCH, ESQ
16                              MATTHEW M. MITZNER, ESQ.

17

18

19

20
    Court Reporter:        FREDERICK R. GUERINO, C.S.R.
21                         225 Cadman Plaza East
                           Brooklyn, New York
22                         718-224-7686

23

24
    Proceedings recorded by mechanical stenography, transcript
25  produced by CAT.

                FREDERICK R. GUERINO, C.S.R.      OFFICIAL COURT REPORTER

2

1          Gubin v. Ambit New York, et al.

2          (The following is a telephone conference in

3   chambers.)

4          THE COURT:  Ms. Rainer?

5          MS. RAINER:  Yes

6          THE COURT:  Hold on for one second and I will

7   conference in your adversary, okay?

8          MS. RAINER:  Okay.  No problem.

9          THE COURT:  Is this Steve Rasch?

10         MS. RASCH:  Yes.

11         THE COURT:  Hello, Mr. Rasch.  I'm conferencing in

12  Ms. Rainer.  One second

13         MR. RASCH:  Sure

14         THE COURT:  Hello.  So we have everybody.  We have

15  Ms. Rainer?

16         MS. RAINER:  Yes.  Can you hear me?

17         THE COURT:  Very well.

18         MS. RAINER:  Okay.

19         THE COURT:  Mr. Rasch?

20         MR. RASCH:  Yes, Your Honor.  And I have Matthew

21  Mitzner with my office here.

22         Would the Court mind if I put the Court on speaker?

23         THE COURT:  No.  Sometimes it makes it difficult,

24  but I will try it.  I may ask you to take it off because I'm

25  on speaker.

FREDERICK R. GUERINO, C.S.R.      OFFICIAL COURT REPORTER

3

1          MR. RASCH:  Sure.  If it is difficult to hear, I'm

2    happy to pick up.  Thank you.

3          THE COURT:  We'll try it that way, though.

4          MR. RASCH:  Sure.

5          THE COURT:  Okay?

6          MR. RASCH:  Yes, your Honor.

7          THE COURT:  Okay.

8          I have had an opportunity to read the new complaint

9    and the new letters.  I've also done some more research.

10          Ms. Rainer, you know, I think there are things that

11    you can do, so I'm going to give you one more chance.  I've

12    focused on every single cause of action, and I want to talk

13    it through with you, and we'll talk it through with your

14    adversary, but I do want you to understand, as I said the

15    last time, that this is the last time.  Okay?

16          MS. RAINER:  Yes, I understand, your Honor.  I'm

17    trying to be as detailed as possible.

18          THE COURT:  I understand, that's why I know you are

19    trying, and that's why I went through - given the time

20    limitations - as much of it with a fine-tooth comb as I

21    could, and I'm prepared to state to you some of the problems

22    that I see, some of which I think you can fix.  Okay?

23          MS. RAINER:  I appreciate that, your Honor.

24          THE COURT:  Okay.

25          But you have to appreciate that your second amended

4

1    complaint is the last one.  Okay?

2            MS. RAINER:  I understand.

3            THE COURT:  Okay.

4            Now, first of all, this is just a general question.

5    The defendants claim entitlement to arbitration in Texas and

6    the plaintiff takes the position that the agreement was oral

7    and that she never signed an agreement.

8            Do the defendants have a signed agreement to

9    continue an arbitration clause?

10            MR. RASCH:  It is my understanding, your Honor, that

11   the way these contracts work, they are executed on line.  So

12   there's a block the consultant checks indicating that they

13   agreed to the terms of the contract, and also to the policy

14   and procedures.  So that's my understanding of the way it

15   works.

16            MS. RAINER:  That is not how my client finds out.

17   They were one of the initial people.  There was no on-line

18   application.  This was all done through the phone, just as I

19   have stated.

20            THE COURT:  Okay.  So, you know, I gather that

21   there's going to be a dispute about that.  Obviously, if --

22   this is a factual issue, and it could foreclose proceeding in

23   this forum and require proceeding in another forum.  I'm

24   going forward because there's a factual dispute here, but I

25   think it makes a great deal of sense for the defendant to be

1  absolutely certain of what you are assuming.

2          MR. RASCH:  Your Honor --

3          THE COURT:  If you don't have something that really

4  is tantamount to a signed agreement, whatever that is, then

5  there's no requirement to arbitrate.  You know this as well

6  as I do.  I'm just saying there would be a huge duplication

7  of effort here, and I leave that up to you.  I'm not about to

8  resolve it because it is a fact issue.

9          MR. RASCH:  Judge, I'm not even understanding where

10  the idea of where the oral contract comes in.  As best as I

11  can tell in the complaint is not clear on this point, but Ms.

12  Rainer seems to indicate -- her client seems to indicate an

13  oral consultant with --

14

15          MS. RAINER:  Your Honor --

16          MR. RASCH:  If I could speak for a second

17          I don't know how that person could bind Ambit

18  Energy, if that person is an independent consultant.  That

19  person is not an agent of Ambit, and certainly in the

20  principal agent relationship, it would have to be the

21  principals that cloak the agent with some kind of parent

22  authority.  The agent, himself or herself, could not cloak

23  himself or herself with that authority.  So even if you take

24  everything that Ms. Gubin is alleging at face value, it still

25  doesn't rise to the level of creating a contract

6

1          THE COURT:  Maybe there's no contract at all.  I

2     have no idea.  This is something you can litigate

3          MR. RASCH:  And, your Honor, the other thing is, the

4     complaint still alleges generically that the 14 defendants

5     breached the agreement.  I mean, the complaint still has all

6     kinds of problems in terms of figuring out what it is

7          THE COURT:  That's not the end of my concerns

8          MR. RASCH:  Sure

9          THE COURT:  That was just the first question I

10    decided to ask, okay.

11         MS. RAINER:  Well, your Honor, if I may.  I wanted

12    to add one thing, so defense counsel understands this is what

13    multilevel marketing is all about.  It is about a consultant

14    bringing in a consultant, and in this case there was no

15    internet on-line application.  It is all done -- the initial

16    stages in my client's case, it was done by telephone.

17    However, what happened to the other consultant is different.

18    As I just said, I wanted to emphasize this is what multilevel

19    marketing is all about.

20         THE COURT:  Okay.  But I think something that you

21    have been put on notice, Ms. Rainer, if it was all done by

22    telephone with another consultant, that could - and I have no

23    idea - raise an issue as to whether the defendants are bound

24    by the agreement of another consultant.  In other words, the

25    other consultant must have actual or parent authority.

FREDERICK R. GUERINO, C.S.R.      OFFICIAL COURT REPORTER

7

1          MS. RAINER:  What I was going to say, that

2     consultant was on the phone to another consultant who has

3     authority to Ambit.

4          THE COURT:  Okay.  This is all fact issues and this

5     will all come out in discovery, once we get there, if we get

6     there.

7          MS. RAINER:  Clearly, your Honor, since 2007 there

8     is something that caused the defendants to make payments to

9     my client.  If there is no binding, then payment would never

10    have been made in 2007 either.

11         THE COURT:  Ms. Rainer, I'm not deciding any of

12    that.  It is nothing that I'm even going to consider.  It is

13    not a question of the pleading or anything like that.

14         MS. RAINER:  The only reason why I raise it as an

15    issue is because the defendants are actually proceeding with

16    the arbitration.  They filed something with the AAA.  Now, I

17    received a letter from the arbitrator saying that we have 90

18    days from August 8th to --.

19         THE COURT:  Ms. Rainer, I'm sorry, I don't mean to

20    interrupt you, but I can't do anything about the arbitration.

21         MS. RAINER:  Okay.  The arbitration is nothing I can

22    do about.  You will have to deal with the arbitration

23    separately.

24         MS. RAINER:  I understand.

25         THE COURT:  I'm sorry, but I also apologize for

8

1    being so late.  That's just part of the fact it's been a hard

2    day.

3           Let me move on to jurisdiction.

4           You still, if you look at the statute, the statute

5    doesn't require residence.  It requires citizenship.  So you

6    have to plead citizenship of the parties, and you can fix

7    that, I assume.

8           In addition to that, there is, as defendant has

9    mentioned, a requirement that when you are talking about

10   partnerships, LLCs and LLPs, you must plead the citizenship

11   of all members.

12          Now, it is possible to read your letter as saying

13   based on your research, your research discloses that the only

14   member of all the defendants is Jere Johnson, and he's a

15   citizen of Texas, then that's okay.  But you still have to

16   plead that at least on information and belief.  You have to

17   have a basis for it.

18          MS. RAINER:  I understand, your Honor.  Perhaps I

19   think because I do more state work and when we talking about

20   residency applies, I apologize.

21          THE COURT:  That's all right.  That's why I'm being

22   specific.

23          Let me also ask Mr. Rasch, are any of the partners

24   in the defendants New York citizens that you are aware of?

25          MR. RASCH:  Well, your Honor, part of the problem is

FREDERICK R. GUERINO, C.S.R.      OFFICIAL COURT REPORTER

9

1  that all of the parties are not properly identified, and it's

2  been a real shotgun approach.  Some of these entities that

3  have been sued are not even necessarily affiliated in any way

4  with my client.  I think I mentioned to the Court in a

5  previous call the problem that there was a non-profit entity

6  that my client served on the board ten years ago.  There's a

7  similar problem with Spruce Systems Inc.

8          THE COURT:  Can you talk to Ms. Rainer and just tell

9  her what the problem is so that she can check it?  If there's

10  an improper defendant in there, I would like to get him out

11  or get it out.  I just want to clean this up so that if we

12  have a lawsuit, we know what the lawsuit is, and I'm trying

13  to work with you to do that.  But I do ask that -- I mean, if

14  the defendant is claiming that one the defendants that you

15  sued has nothing to do with anything, listen and research it

16  before you draw up the next complaint.  Okay?

17          MS. RAINER:  Absolutely, your Honor.  I've asked

18  numerous times for defense counsel to try to even negotiate

19  and talk, and that has been lacking.  I appreciate that

20  perhaps you will encourage this open communication.

21          THE COURT:  Mr. Rasch, on this piece I do, because I

22  suspect that there's no problem with diversity jurisdiction,

23  and for us to spin our wheels over this, I can make her plead

24  it, and I will make her plead, but why do we have to go over

25  this over and over again, if in fact nine of the ten, or

FREDERICK R. GUERINO, C.S.R.          OFFICIAL COURT REPORTER

10

1   whatever, she is correct, there are no New York citizens, and

2   the tenth you don't know about?

3          MR. RASCH:  Judge, if I may address that last

4   comment very briefly.

5          The only reaching out to me Ms. Rainer has done is

6   wanting to discuss settlement, and the Court --

7          THE COURT:  I understand.

8          MR. RASCH:  Your Honor, just very, very briefly.

9   It's really important.  I think there's a missimpression

10  created by her statement.  She has not reached out to me and

11  said, hey, I can't find out who these entities are, or what

12  does this entity have to do with your client.  What she has

13  reached out for is a settlement meeting, and the Court needs

14  to understand the way this was done, there was something like

15  20-something, the parties sued asking for a billion dollars

16  in what we think are many frivolous claims against

17  frivolously asserted defendants.  My client found out about

18  this through the Reuters News Service.  We think, your Honor,

19  this was nothing more than a shake down designed to create a

20  sensationalist story, then now we damaged you in the

21  marketplace by putting this billion dollar lawsuit on the

22  internet, we want to settle.  Our client is not going to

23  respond to those tactics.

24         THE COURT:  Whatever.

25         MS. RAINER:  Your Honor, if I may make one quick

FREDERICK R. GUERINO, C.S.R.        OFFICIAL COURT REPORTER

11

1   statement.  I know your time is very precious, and what I'm

2   saying is, defense counsel is not familiar with this

3   industry.  I personally attended one of the Ambit --

4           THE COURT:  I'm sorry, I'm not involved in this, if

5   people are not ready to settle.

6           MS. RAINER:  I want to defend myself from --

7           THE COURT:  You don't have to defend yourself

8   because I'm not accepting as true anything anyone is saying,

9   okay.  You need not defend yourself.  All I'm trying to do is

10  get through the stage of having a complaint that will

11  actually start a lawsuit, that's all I'm trying to do here.

12          So I am suggesting that, and it sounds like

13  Mr. Rasch is perfectly willing to discuss it with you.  If he

14  has specific defendants that have nothing to do with this

15  case that you have named, he will tell you about it.  I would

16  assume, though, based on the facts of what I haven't heard,

17  that as to the defendants that have something to do with the

18  case, even if in your view there are no causes of action, you

19  don't know of any members who are New York citizens; is that

20  right?

21          MR. RASCH:  Your Honor, I just can't answer that

22  question at this point because I don't have full information

23  on all of these entities, because some of these entities are

24  not related to our client.

25          THE COURT:  Well, the non-related entities ought to

FREDERICK R. GUERINO, C.S.R.      OFFICIAL COURT REPORTER

1    get worked out, okay.  Once they are worked out, as far as

2    I'm concerned, and particularly absent any information from

3    you, if there are members of relevant defendants who are New

4    York citizens, I would be satisfied if it is true, and if it

5    has been researched, that a statement in a complaint that on

6    information and belief, if this is the case, I don't know, it

7    is what I understood your letter to be saying, that all of

8    the defendants have a sole member and that Jere Johnson is a

9    citizen of Texas.

10          MR. RASCH:  And, your Honor, just briefly on that

11   point.  We actually encountered this exact issue in another

12   case and we don't think that's sufficient to allege on

13   information and belief.  We think there's clear case

14   authority on that and we will explain that to the Court at

15   the appropriate time.  The case already says --.

16          THE COURT:  You know, I really feel you are getting

17   hung up in the wrong place.  I realize -- are you

18   representing all of the defendants in this case?

19          MR. RASCH:  Your Honor, we have sent out a letter

20   setting forth the defendants that we do represent, as well as

21   I think we dropped a footnote saying the ones we couldn't

22   confirm.

23          THE COURT:  Okay.  As to the defendants that you do

24   represent, are you in a position to say whether or not any of

25   the members are New York citizens?  I mean, I feel like we

1   are just playing a game at this point.

2           MR. RASCH:  Well, your Honor, I think from our

3   perspective when you look at the way this complaint has been

4   set up with all of these parties, to thrust the burden on us

5   --

6           THE COURT:  I'm not thrusting the burden on you.

7   I'm requiring her to clean it up.

8           MR. RASCH:  Sure.

9           THE COURT:  But I'm really beginning to wonder

10  whether or not, you know, once we get passed the legalities,

11  some of this is in good faith from your perspective --

12          MR. RASCH:  Well, your Honor --

13          THE COURT:  -- as to who you represent.

14          MR. RASCH:  Well, your Honor, what I would suggest

15  is that I don't think that there is any good faith basis for

16  Ms. Rainer to be alleging that there's any contractual

17  relationship between her client and any entities other than

18  Ambit Energy, L.P.

19          THE COURT:  I have no idea.  That's a legal issue.

20  I'm note sure how to decide it.  It hasn't even been in your

21  letters.  But I am -- I know that you will, and I'm asking

22  Ms. Rainer to discuss with you who the real defendants or

23  defendant should be in this case and what the relationship

24  is.

25          Now, you can't speak to the relationship of

FREDERICK R. GUERINO, C.S.R.        OFFICIAL COURT REPORTER

14

1    defendants you don't know anything about; but as to the

2    defendants who are your client, you could certainly talk to

3    her about that, and she can confirm whether or not what you

4    are saying is true.

5          MR. RASCH:  Your Honor, I'm happy to have a

6    conversation about who the proper defendants have been.  I

7    think given the history of this case, I think the Court can

8    realize why we have concerns about the way this has been set

9    up and all of these defendants --.

10         THE COURT:  Well, I have some concerns, too, but,

11   frankly, I would like to get it clarified at this point in

12   time.  I don't want any continued obfuscation.  So if you

13   would talk to her and answer her questions, then maybe she

14   will be in a position to be satisfied that Ambit Energy is

15   the only defendant.  I don't know.

16         MR. RASCH:  Judge, I'm happy to talk to her about

17   that.  The only thing I told her that we are not interested

18   in discussing her claim that she wants to settle --.

19         THE COURT:  Okay, that's fine.  I would assume that

20   discussions of settlement would come sometime after we have a

21   pleading.  We don't have a pleading yet, okay, and that's up

22   to you.  I mean, if you make it past me and there's an

23   existing complaint - which won't shock me - you will go

24   before the magistrate, and you will start your discovery, and

25   you will make a decision as to when, if ever, it is time to

FREDERICK R. GUERINO, C.S.R.       OFFICIAL COURT REPORTER

15

1    talk about settlement.

2           MR. RASCH:  Sure.  Thank you, your Honor.

3           THE COURT:  Right now I need a pleading or we don't

4    have a case in my court, that's why I want you to talk to

5    each other about the appropriate defendants, without turning

6    this into a "gottcha", but have the plaintiff to adequately

7    plead diversity, okay.

8           MR. RASCH:  I'm happy to do that.  I think the

9    starting point from the plaintiff's standpoint is really

10   identifying who she claims her client had any kind of

11   contract with, because from what I have seen, there's no good

12   factual basis to say a consultant had any authority to bind

13   any of these 14 defendants.

14          THE COURT:  I really don't know.  I understand your

15   argument.  She's made a further statement relating to the

16   fact that the consultant that she spoke with also had an even

17   higher consultant with actual authority to bind either the

18   defendant or the defendants.  That's what she said.  I don't

19   know if it is true.

20          MR. RASCH:  But, your Honor, I think from the

21   pleading standpoint, there would have to be a pleading --

22   there couldn't be just a conclusory pleading that that

23   person's authority --

24          THE COURT:  We ultimately want to know who she has a

25   contract with as part of the pleading.

16

1          MR. RASCH:  Right.  For example, your Honor, there's

2     an allegation that Jerry Thompson and Chris Chambless

3     personally breached this agreement.

4          THE COURT:  Well, we need to go through some of

5     these things.  This just has to be cleaned up, and I knew it

6     was going to take some time to do this.  This is the second

7     time I'm going it.  I will not do it again.  I don't see any

8     reason why we can't go through all of these things and talk

9     about them.  At least she will know -- Ms. Rainer will know

10     what I think she will have to do to clean up her pleading.

11          But, yes, you are right.  I mean, we have to know

12     who she alleges she has a contract with in this pleading.

13     So, Ms. Rainer those are things you will have to figure out

14     in advance, okay?  So we'll do it one at a time, I mean, that

15     relate to your contract claim, but I just wanted to get

16     through diversity jurisdiction first.

17          As I understand it, you are going to talk to the

18     defendant.  You are going to go through whatever further

19     investigation you need to do, and you will make sure that you

20     plead in one way or another that all -- there are no members

21     of any of the defendants who are New York citizens, otherwise

22     you will not have diversity.  Okay?

23          MS. RAINER:  I understand, your Honor.  Again, I

24     thank you.  As I said, I feel that the other side has been

25     evasive, confusing.

FREDERICK R. GUERINO, C.S.R.      OFFICIAL COURT REPORTER

1          THE COURT:  Come on, let's not get into this,

2    please, please, please.  I don't wanted this.  You are

3    wasting my time.  I'm trying to help.

4          MS. RAINER:  I understand.  I appreciate you are

5    helping.

6          THE COURT:  Don't talk about things that are not

7    relevant to what we are discussing, please.

8          MS. RAINER:  I understand.

9          THE COURT:  Okay.  Turning to the fraud and RICO.

10          MR. RASCH:  Your Honor, may I just make one more

11    point about the contract action, and this goes --

12          THE COURT:  I'm perfectly happy to go through the

13    breach of contract action.

14          MR. RASCH:  Let me give the Court an example.  In

15    paragraph four --

16          THE COURT:  Wait a second.  Let me get the

17    Complaint.

18          (Pause)

19          Paragraph four doesn't help us very much

20          MR. RASCH:  It says, the defendants breached the

21    agreement by failing to perform its obligations

22          THE COURT:  No, I understand.  This has all got to

23    be cleaned up.

24          Wait, wait.  I'm talking to Ms. Rainer.

25          MR. RASCH:  Sure.

1          THE COURT:  Ms. Rainer, we need to know who the

2     proper defendants are, and we need to know the role played by

3     each proper defendant.  Until we know that, we don't know who

4     is obligated to perform under your oral contract.

5          Do you understand what I am saying?

6          MS. RAINER:  I understand.

7          THE COURT:  Paragraph four, I mean, you have got to

8     completely redo this, okay.  In terms of the breach of

9     contract, the most glaring problem is the one that Mr. Rasch

10    just alluded to, which we don't know who the defendants

11    really are,.  We don't know who is obligated to do what.  So

12    we don't know who is being charged with the breach of what

13    obligation, which is what a breach of contract is.

14         Do you see what I'm saying?

15         MS. RAINER:  Yes, Your Honor.

16         THE COURT:  Now, that to me is the main thing.

17         Do you have any other problem, Mr. Rasch, with the

18    breach of contract claim?

19         MR. RASCH:  Well --

20         THE COURT:  She's got to plead a valid contract

21         MR. RASCH:  Well, I think, your Honor, there are

22    three things here

23         The first thing, if it is an oral contract that is

24    based on her claiming that a consultant -- an independent

25    consultant of Ambit somehow had the authority to bind the

19

1   company and enter a contract on behalf of the company

2          THE COURT:  Then that should be in a pleading.  I

3   agree with you

4          MR. RASCH:  There has to be specific facts and

5   obligations that would support that theory.  I don't think

6   there are any

7          THE COURT:  Ms. Rainer, that's one problem that runs

8   through this whole thing.  In our last conference, you

9   certainly took my warning that you look at the various causes

10  of action.  I know you are trying to be specific, but you

11  haven't been specific enough.  Something that is just totally

12  conclusory just won't do it.  Okay?

13         MR. RASCH:  So, your Honor, that's one issue.  It is

14  just an oral contract.

15         What are the facts that support the idea that some

16  independent consultant had the ability to -- no indication

17  who the parties are to the contract.  There are conclusory

18  obligations that the defendants did this and this and that,

19  and how Spruce Systems, how Greenway Holdings in any way

20  connected with this, how any individuals could probably have

21  claimed to be parties to a contract with Ms. Rainer's client.

22  And there are numerous -- it is not even clear the defendants

23  Ambit Energy breached the contract.

24         THE COURT:  This is something I hope at this point,

25  Ms. Rainer, you do understand you have got to clean up who

FREDERICK R. GUERINO, C.S.R.        OFFICIAL COURT REPORTER

1    the appropriate defendants are, who you know in the breach of

2    contract claim, which of the defendants in the breach of

3    contract claim, what are their obligations under the

4    contract, so that we understand that they breached their

5    obligations, okay?

6         MS. RAINER:  Your Honor, again I appreciate earlier

7    you said that I do need the assistance of defense counsel

8    because these companies, these are all intertwined and I am

9    saying that all of the defendants are Ambit defendants.

10        THE COURT:  Well, I mean, we can't do that.

11        MS. RAINER:  They are all intertwined, these

12   companies.

13        THE COURT:  Well, I mean, you will have to talk to

14   defense counsel, and if you need to look into it further --

15   you can't just say everybody, unless you have a basis to

16   believe everybody.  I mean, when you are talking about a

17   breach of contract, it is elemental that you need to know who

18   you got the contract with, because that's the person who has

19   the obligations under the contract -- that's the entity that

20   has the obligations under contract.  Do you see what I am

21   saying?  So you can't just throw up your hands and say it is

22   all a mishmash.

23        MR. RASCH:  That's really the problem here.  I think

24   the Court raised it the last time.  The obligation of a

25   lawyer under Federal Rules --.

FREDERICK R. GUERINO, C.S.R.     OFFICIAL COURT REPORTER

1        THE COURT:  I don't want it to hear that.  Let's

2    restrain ourselves as much as we can.

3        MR. RASCH:  From our standpoint, Judge - I know you

4    asked us to confer - but from our standpoint, we think the

5    only relationship here is between Ms. Gubin's client or

6    clients and Ambit Energy L.P.  we don't think any of these

7    other entities --.

8        THE COURT:  Well, you may well be able to convince

9    her of that.  Maybe that's the contractual relationship.

10   Maybe some other entity defrauded her.  I have no idea.

11       MR. RASCH:  Judge, it is the plaintiff's obligation

12   to investigate, not to just throw the spaghetti against the

13   wall.

14       THE COURT:  She did investigate.  She went and got

15   all of these things, and I really -- there's some spaghetti

16   against the wall, but there's no reason in the world, if it's

17   clear to you that Ambit is the only proper defendant, that

18   you should explain that to her and why, let her look it up

19   and she will plead what she pleads, and we'll see what

20   happens, but this is her last pleading.

21       MR. RASCH:  Judge, I guess the problem I'm having in

22   terms of explaining it is that it is like explaining a

23   negative.  I don't understand what the legal theory is.  To

24   claim that there's a contract with anybody other than Ambit

25   Energy L.P. -- I know there's a relationship between Ms.

FREDERICK R. GUERINO, C.S.R.      OFFICIAL COURT REPORTER

22

1    Gubin and Ambit Energy, because Ambit Energy L.P. pays her

2    under a consult and arrangement.  I understand that.  I don't

3    know where this is coming from to allege any of these other

4    parties, any of them, have an oral, written or any other kind

5    of contract with her.  So it is a little bit hard for me to

6    offer more of an explanation, other than just saying I have

7    no idea where you are coming from.

8            THE COURT:  Okay.  Let me ask you this, Ms. Rainer,

9    where did you get all of these entities?

10           MS. RAINER:  Your Honor, I did some research about

11   Ambit, and when I saw all of these companies were

12   interconnected to Ambit, and all of them --.

13           THE COURT:  When you say interconnected, exactly

14   what relationship are you talking about?

15           MS. RAINER:  Well, again, I don't have it in front

16   of me.  I actually had a whole chart as to this.  That, for

17   example, the holding company is above Ambit Energy, and I had

18   actually charted it all out.

19           THE COURT:  The fact that a company has a

20   relationship with another company doesn't mean that the

21   second company contracted with your client.

22           Do you understand that?

23           MS. RAINER:  I understand, but they all worked

24   together to defraud my client.

25           THE COURT:  Wait, wait.  We don't know any of that,

1   either.  If you knew that, you can plead it.  But if all you

2   know is that you looked them up and you saw that they are

3   interconnected, see what you can do.  If you discovered

4   during discovery that there's another defendant who ought to

5   be a defendant in this case, then you can amend your

6   complaint to add the other defendant.  Then you will have a

7   real basis for doing that.

8          MS. RAINER:  Your Honor, for example, Ambit Energy

9   Holdings LLC provides the energy, parent company of Ambit

10  Texas, LLC provides what is on the web page.  It is all

11  interconnected, that's what I keep saying.  It is the nature

12  of this industry.  What I wanted to emphasize is that I don't

13  like the fact that defense counsel is acting in bad faith.  I

14  actually have been at one of these meetings and people who

15  join these are told that the income level they can make is up

16  to infinity.  This is what is said at these meetings.

17  Therefore, the fact that my lawsuit stated a large amount, I

18  think offended --

19         THE COURT:  I'm not talking about what amounts you

20  put down, that's your problem.  We have pleading problems

21  right now.  I really don't want to talk about anything other

22  than a pleading problem, because now we have been talking for

23  thirty minutes and we only addressed one of the 15 things I

24  want to address, and I have a lot of other things to do

25  today.

1      MR. RASCH:  The court just now hit on the precise

2  problem.  It seems like what is happening here, what Ms.

3  Rainer has done on the internet and any entity that has any

4  affiliation, okay, with Ambit Energy L.P., she's just

5  throwing them in the lawsuit.  If we are going to talk about

6  Ambit Energy affiliates, there are probably 50 or 100

7  affiliates.  The fact that they may be a subsidiary

8  affiliate, that does not create a cause of action against the

9  affiliated entity, and that's the fundamental problem we are

10  having.

11      THE COURT:  That is the problem, and that's what I'm

12  saying to Ms. Rainer.  Just the fact that somebody is

13  affiliated does not make them ipso facto a defendant in a

14  lawsuit.  You have to go through each cause of action and

15  decide whether or not a particular entity is an appropriate

16  defendant in that cause of action.  You have to do that one

17  at a time.  We are just with the first one.  We are with the

18  breach of contract action.  I don't see, based on breach of

19  contract, how you can sue anyone with respect to whom your

20  client did not have a contract.

21      Do you understand?

22      MS. RAINER:  Yes, I understand, your Honor.

23      THE COURT:  Okay.

24      Now, let me say, I think, assuming that she pleads a

25  breach of contract - and Ms. Rainer knows what she has to do

FREDERICK R. GUERINO, C.S.R.      OFFICIAL COURT REPORTER

1   for, quantum meruit, it is okay to sue under either.  She can

2   plead a quantum meruit.  She can't do both, but she can so.

3   And by the time you get to your quantum meruit, you will know

4   who the right defendants are, et cetera, and who it was

5   actually that you are alleging that accepted benefits for the

6   services performed by your client, and that your client could

7   reasonably expect a payment from that entity because your

8   client actually did supply that entity with a benefit.

9          Do you understand?

10          MS. RAINER:  Yes, Your Honor.

11          THE COURT:  Think of defendants' one cause of action

12   at a time.

13          Let me just briefly talk about the fraud action

14   before the RICO action, because one of the main problems in

15   the RICO action is I have some doubts, based upon your

16   allegations, that you going to be able to prove fraud.  And

17   if you can't prove the fraud, because your claim of

18   fraudulent misrepresentation or fraudulent conduct seems to

19   be nothing but restatements of what you were going to tell me

20   your obligations under the a contract, if that's the case,

21   you won't have any fraud action.  So you know what the

22   elements are.

23          There are several problems that I see.  Most of your

24   allegations seem to relate to a failure to reimburse you

25   fairly under the contract, or a failure of good faith to do

FREDERICK R. GUERINO, C.S.R.        OFFICIAL COURT REPORTER

26

1    what you are supposed to do under the contract.  None of

2    those claims will make out a fraud claim.

3            There are other claims -- wait for a second.  There

4    are other claims that say things like, well, they represented

5    they had the most competitive rates.  I think if you look at

6    it, that's going to fall into a category known as "puffing,"

7    which is not -- statements with respect to which it cannot be

8    expected that anyone would reasonably rely, because you have

9    to prove reliance, right?

10           MS. RAINER:  Yes.

11           THE COURT:  As an element of fraud.  So what you

12   have to do is be very specific about what statements were

13   made, identify the statement.  And because 9(b) is a required

14   means of pleading, when you are talking about a fraud claim,

15   you are going to have to be specific about that.  What were

16   the misrepresentations?  Who made them?  You are going to

17   have to plead reasonable reliance on the misrepresentations,

18   and then you are going to have to prove exactly how they

19   caused you injury.  Now, that's just going through the

20   elements.

21           The problems that I'm seeing with things that you

22   are saying as misrepresentations - isn't a whole category of

23   them - are what I would imagine would be contractual

24   obligations, that will not give you a fraud claim.  And

25   simply saying in the complaint that there was a breach of a

1    legal duty extraneous to the contract does not tell anyone

2    what in the world you are talking about, because you haven't

3    said what is the duty and how it is extraneous to the

4    contract.  So we need to know what the contract is for the

5    contract claim, and we need to know what falls under the

6    fraud claim is plainly extraneous to the contract.

7          You also have to know that before you write this

8    claim, you are going to have to research the issue of

9    reliance.  You know, saying, for example, we are a company of

10   integrity, we'll insure genuine savings over someone else,

11   strikes me as plainly puffing.  If you have a representation

12   that they guaranteed me reimbursement, that's a contract

13   issue.  That's not a fraud issue.

14         We have the most competitive rates, that's puffing.

15         I must admit, I can't understand from your complaint

16   - and I read it a number of times - what slamming is, and how

17   it hurts your client.  Maybe you can explain that to me now.

18   I mean, are you talking -- what is the injury to your client

19   from slamming?

20         MS. RAINER:  The injury to my client from slamming

21   is that it is being allowed to -- the way Ambit permits the

22   consultant to put these customers under their own level and

23   thereby my client is not being paid on her level.

24         THE COURT:  Is the slamming, whatever it is,

25   directly depriving your client of customers?

28

1          MS. RAINER:  Well, I see my issue, because on the

2     one hand slamming it shouldn't be done because it is illegal,

3     but it is also depriving my client of legitimately getting

4     customers.

5          THE COURT:  Is this customers your client can't get

6     or customers who were taken away from your client?

7          MS. RAINER:  These were clients that would be taken

8     away, that lost opportunity.

9          THE COURT:  No, no, lost opportunity is different

10    from stealing an existing customer, and that's my question.

11         MS. RAINER:  No, no, this is not stealing an

12    existing customer.

13         THE COURT:  It is lost opportunity?

14         MS. RAINER:  Lost opportunity.  To get this customer

15    in, you are slamming them and changing things on your own.

16         THE COURT:  Well, that answers a question for me as

17    to whether or not that has anything to do with RICO, and

18    we'll get to that in a second.  But do you understand in

19    general about my concerns about your fraud claim and what you

20    have to do?

21         MS. RAINER:  I understand.  My only thing, what I

22    wanted to add on the fraud claim, I'm looking at the

23    complaint, has both a consultant employee and the customer.

24         THE COURT:  I understand, but I really have trouble

25    understanding -- you know, you keep saying that, but you have

1   to show how it is meaningful.  In other words, you have to

2   show specifically what the representation was to your client,

3   you know, the knowing falsehood, the intent to defraud, the

4   reliance, and exactly what injury your client suffered as a

5   result of that particular representation.

6          Do you see what I'm saying?

7          MS. RAINER:  Yes, Your Honor.  I will try to clarify

8   that further in the next complaint.

9          THE COURT:  The next is the last, though.  Okay?

10         MS. RAINER:  I hope so, too.

11         THE COURT:  Not I hope so.  This is an

12  understanding, which is grounding this endless phone

13  conversation and my analysis of your complaint, and this was

14  an understanding that you confirmed at the beginning of this

15  discussion.  I have no desire to do all of this for you, if

16  you are just going to come back and say, why don't you check

17  this one out now.

18         MS. RAINER:  I didn't mean it that way.  I'm saying

19  I'm hopeful I can satisfy because I'm doing as much work as I

20  can.

21         THE COURT:  I know you are trying.  There's no doubt

22  in my mind that you are trying.  But all I'm saying is this

23  is your last pleading.  It will be put to the test by a

24  motion by the defendants, if there's a motion to be brought,

25  and when we are done, if you didn't plead certain causes of

1    action, they are gone with prejudice.

2         Do you understand?

3         MS. RAINER:  Yes, I understand.

4         MR. RASCH:  Judge, if I may briefly speak to the

5    fraud claim.  We got the same problem here that we had with

6    the breach of contract.  The cases interpreting Rule 9(b)

7    specifically require that you --.

8         THE COURT:  Who, where, when, all of that.

9         MR. RASCH:  And it has to be that as to each one of

10   the 14 defendants.  You can't just --

11        THE COURT:  Absolutely.

12        MR. RASCH:  -- you can't generically say --

13        THE COURT:  Absolutely --

14        MR. RASCH:  -- that Defendants did this or the

15   defendants did that.

16        THE COURT:  I think we already made that point.  We

17   are now talking about fraud.  So when we are talking about

18   fraud - I'm talking to Ms. Rainer - you are only going to sue

19   in the fraud claim the defendants who are responsible for

20   making fraudulent misrepresentations, and then you are going

21   to tell us under 9(b) the contents of the communication, who

22   was involved in making the communication, when the

23   communication, where the communication, how the communication

24   was fraudulent.

25        Do you understand?

1          MS. RAINER:  Yes, your Honor.

2          THE COURT:  Particularly the fraud.  Any fraud claim

3    has got to be very, very specific.  Okay?

4          MS. RAINER:  Yes.

5          THE COURT:  Read 9(b).

6          MS. RAINER:  The only problem that I foresee is that

7    this happens on a daily, weekly, monthly basis.

8          THE COURT:  Well, then, saying every single week in

9    a newsletter entitled Block from the corporation, there is a

10   representation that says A, B.

11         Two, that particular representation is false.  You

12   know, the particular defendants responsible for the

13   representation, the responsible defendants, I mean, just

14   based on a straight fraud, are just going to be whoever it

15   was that made the representation.  If it is an employee of a

16   corporation, and presumably the statement was made by a

17   corporate employee on behalf of the corporation, then that's

18   the particular corporation or LLC, or whatever, that you are

19   suing on that fraud claim.  If someone else, if another

20   entity committed a different fraud, then you will sue that

21   entity.  But each cause of action is specific to any

22   defendant.  All right?

23         MS. RAINER:  Yes, Your Honor.  I understand.

24         THE COURT:  Okay.

25         MR. RASCH:  Judge, just briefly by way of example to

32

1   show the flaws that I think can't be fixed, if these are in

2   fact really claims.

3        The Court brought up the slamming.  Well, without

4   knowing any specifics, of course I can't verify whether these

5   allegations of clamming are base or not.  Ms. Rainer

6   apparently doesn't represent the person that was supposedly

7   slammed, right.  So there is no claim there because she

8   doesn't represent the person who was slammed.  And, as I

9   understand it, she is claiming if someone was slammed - if

10  that ever occurred - that removes one person from the

11  universe of people that could conceivably be recruited by her

12  client.

13       The question I put to her, that I think is just what

14  you are saying, is, she has to plead what injury was caused

15  to her client.  I know in the RICO context that that is too

16  indirect.  I'm not sure in the fraud context.  So I will not

17  tell her she can't do it.

18       MR. RASCH:  Well, presently the Rule 9(b) case, I

19  think the law is clear, you can't have that sort of rank

20  speculation as forming the basis for a fraud claim, and you

21  certainly can't throw spaghetti against the wall suing 14

22  people.

23       THE COURT:  We have been through this.  She knows

24  her fraud claim has to be specific to any particular

25  defendant she names as a defendant in her fraud claim, okay.

FREDERICK R. GUERINO, C.S.R.        OFFICIAL COURT REPORTER

1          Let me say, it may be something that you may look

2     into, Ms. Rainer, because the slamming plainly is not going

3     to work with RICO, because there's a direct causation

4     requirement.  Plaintiff's injury must be directly caused by

5     the RICO violation, and if you are saying that slamming

6     created the injury, then that's not going to be direct.  You

7     can do that research and make sure I'm right.  I'm not saying

8     I'm right about anything, but I'm trying to give you some

9     guidance about what to look into.

10          I think there's a good chance Mr. Rasch is right,

11    you will have the same problem with fraud.  It is just too

12    diluted to say that if a defendant slams with respect to a

13    customer, so that the customer goes to somebody else, but

14    that wasn't your customer, that may not be enough to allege

15    injury to your client under a fraud theory.

16          MS. RAINER:  The injury occurs when Ambit allows

17    this customer to be put under a different level or

18    transferred to other individuals, thereby removing it from

19    the multilevel networking --.

20          THE COURT:  Wait, let me just say --

21          MS. RAINER:  Removing the customers, that's where

22    Ambit comes in.  They are removing these customers from my

23    client's pyramid and putting them to somebody else.

24          THE COURT:  Well, you just told me that no one took

25    clients -- no one took customers away from your client.  They

FREDERICK R. GUERINO, C.S.R.       OFFICIAL COURT REPORTER

34

1    simply did things with customers, so they were not available

2    to customers to your client.

3         MS. RAINER:  That's two parts.  One is the slamming,

4    and the second part of the fraud is the fact that customers

5    -- another consultant is able to transfer to another

6    consultant, thereby removing these customers from my client

7    fraudulently, because these are the clients --.

8         THE COURT:  Okay.  Let me just explain.  I will not

9    go through it with you, but you are going to have to really

10   clearly explain how your client is directly injured by

11   slamming - which I don't begin to understand - by clearly

12   explaining what slamming is, and being very precise about the

13   injury to your client from it.

14        Do you understand what I'm saying?

15        MS. RAINER:  I understand.  I just wanted to clarify

16   that it is not just the slamming.  It is also that there's a

17   transfer of customers on the different pay levels of this

18   pyramid.

19        THE COURT:  Well, you may well be able to plead that

20   there are customers that are part of your client's line in

21   the pyramid, as a result of which your client is getting

22   compensation from Ambit, who are taking away from your

23   client's line and given to someone else.

24        Now, I don't know if this is a fraud or not, because

25   I don't know what the representation is and I don't know what

FREDERICK R. GUERINO, C.S.R.        OFFICIAL COURT REPORTER

1   the reliance is.  I mean, in a way maybe this is even a

2   breach of contract because --

3        MR. RASCH:  That's the other problem I'm having.

4   Even if any of this were true - which based on what I know I

5   don't believe it is - and even if there was some kind of

6   tangential harm - which I still don't see - none of this

7   would be a fraud claim, because it doesn't meet the elements

8   of a fraud claim under state law.

9        THE COURT:  Well, I think, Ms. Rainer, you

10  understand what we are saying here.  In other words, if

11  somebody is impairing compensation due you under the

12  contract, that is a breach of contract.  So if the slamming

13  turns out to be that with respect to your client, then that's

14  a contract claim, not a fraud claim.

15       MS. RAINER:  Yes, Your Honor.

16       THE COURT:  I don't know.  You figure it out.

17       MS. RAINER:  Right.  I will further talk to my

18  client and try to make it as specific as possible.  And, of

19  course, your Honor, if it doesn't apply, I will remove it.

20       THE COURT:  I know that.  I know that.  I'm

21  confident that you will.  So we talked about fraud.

22       As to RICO, you have to deal with the entire fraud

23  thing first.  Because you are going to have to rely on -- you

24  have to plead specifically two predicate acts under RICO.  I

25  understand you are talking in general about wire and mail

1   fraud.  You will undoubtedly be able to plead two mails or

2   more, or hundreds, or two transmissions or more, or hundreds,

3   but you have to proceed them.  Okay?

4           MS. RAINER:  I understand.

5           THE COURT:  Now, again, you have to get through

6   essentially the whole issue of how something is fraudulent in

7   order to develop the existence of a fraudulent scheme.

8           Do you understand?

9           MS. RAINER:  Yes, your Honor.

10          THE COURT:  We've talked about the fact the problems

11  relating to that.  The two biggest problems that I see with

12  RICO for you are finding an underlying fraud that really is a

13  fraud, and being able to plead that the fraud that you found

14  directly caused injury to your client.  There are -- I mean,

15  RICO has a lot of layers, and I know you know that, and the

16  most basic level there has to be substantive RICO violations

17  under 1962, and the mail and wire fraud statute would do

18  that, if you could plead them, an injury to business or

19  property and direct causation.  The injury must be caused

20  directly by the particular RICO violation.  Do you see what

21  I'm saying?  It can't be indirect.

22          MS. RAINER:  Yes, Your Honor.

23          THE COURT:  So that's why I said if slamming did

24  anything fraudulently, it is hard to imagine that you will be

25  able to prove or you will be able to allege the direct

1   causation.  But that's something you will have to do.

2          MS. RAINER:  I understand, your Honor.  And I will

3   explain to my client that if at this stage we may have to

4   persist as a cause of action, however to further discover.

5          THE COURT:  If through discovery you have a cause of

6   action you can put in, you can put it in.  I don't think you

7   have a statute of limitations problem, do you?

8          MS. RAINER:  I will work my best to find out

9   everything and to research every incident and every event,

10  but I will also talk to my client.  Perhaps that may be one

11  of the causes of action now to remove.

12         THE COURT:  That may very well be because you may

13  discover during discovery you have the claim, and if that's

14  the case, I will permit an amendment.

15         MS. RAINER:  I appreciate that, your Honor.

16         THE COURT:  Okay.  So we talked about contract,

17  breach of contract, quantum meruit, fraud, and RICO.

18         Let's move on to defamation.  The major problem here

19  is -- well, okay.  One of the problems with defamation is the

20  same with every cause of action.  We don't know who the

21  defendants are with respect to defamation.  So you have to be

22  specific as to the defendant, because in defamation you have

23  to be specific as to precisely what has been alleged to be

24  defamatory.  The only thing that I saw in here were

25  allegations that it was said about your client that she

38

1   didn't adhere to company policies and procedures and that

2   your client said that she should be avoided.

3          Now, I'm not sure what is defamatory about a claim,

4   you know, that she didn't adhere to procedures.

5          MS. RAINER:  Well, they basically were accusing her

6   of going to some competitor that her brother named.  Her

7   brother, who is Joseph -- some man by Joe who is related to

8   her household was part of some competitive company and that

9   kind of caused a domino effect in Ambit, and also information

10  that was passed on that she is some kind of, you know, a

11  trader and she should be dealt with.

12         THE COURT:  Well, if you have specific allegations

13  of bad things that were said about your client and what you

14  are relying on, put them in your complaint.

15         MS. RAINER:  I will, your Honor.

16         THE COURT:  And tell us where you got them.

17         MS. RAINER:  I wanted to know not that Ambit itself

18  later took them away, they shutdown her website with this

19  claim, and a few days later they reopened it because they had

20  no justifications.

21         THE COURT:  Well, we are not here to persuade me

22  that we have a case or not a case.  My only purpose now is to

23  tell you things that you ought to look at when you do your

24  absolutely final repleading.  Okay?

25         MS. RAINER:  Yes, Your Honor.

FREDERICK R. GUERINO, C.S.R.      OFFICIAL COURT REPORTER

39

1          THE COURT:  So look at specifically what is alleged

2     to be defamatory, specifically who did it, more about to whom

3     it was published.  Statements like plaintiff should be

4     avoided are not statements of fact.  They are statements of

5     opinion.  So go to the law of defamation and make sure when

6     you pick and choose the defamatory statements, you are

7     picking and choosing statements that are not statements of

8     opinion, but rather statements of fact.  Okay?

9          MS. RAINER:  I will.  Okay.

10          MR. RASCH:  If I may speak briefly?

11          The other possibility here, part of the allegation,

12     as I understand it, is she's complaining that the concerns

13     about her client being affiliated with a competitor.  To the

14     extent those were expressed internally at the company as part

15     of the investigation of her misconduct, that carries a

16     qualified privileged.

17          THE COURT:  I understand.

18          Ms. Rainer, I don't know if it -- it sounds like it

19     may well as a matter of fact.  That's not anything that I can

20     adjudicate now.  You should think, Ms. Rainer, to yourself,

21     is it internal in the company such that it does -- I mean, I

22     don't know how -- you will find out who it got published to

23     with respect to whom there was no privilege.

24          MR. RASCH:  Judge, what I'm looking at specifically

25     is paragraph 46 in the complaint.  In the fourth line it

FREDERICK R. GUERINO, C.S.R.        OFFICIAL COURT REPORTER

40

1   says:  The defendant is liable to plaintiff.  Defamation was

2   expressed in written form here in communications to Ambit

3   leadership consultant customers.

4          THE COURT:  I'm sorry, this is where?

5          MR. RASCH:  Paragraph 46, your Honor, she

6   specifically alleges that --

7          THE COURT:  Hold on.  Let me just find it.

8          MR. RASCH:  Okay.  Go ahead.

9          MR. RASCH:  Paragraph 46, your Honor, the fourth

10  line, she specifically alleges that the liable was in part at

11  least communicating to Ambit leadership and consultant.

12  Well, those communications would carry a qualified privilege.

13         THE COURT:  Yes, you have to be very careful, Ms.

14  Rainer, because if you make clear in your complaint that it

15  went to someone internal in Ambit, or to a consultant, if you

16  make clear that what you are talking about is privileged,

17  then the claim goes, even before you get to discovery.  So

18  make sure that you have a good argument that the statement

19  claimed to be defamatory is not privileged.

20         Do you understand?

21         MS. RAINER:  Yes, Your Honor.

22         THE COURT:  Because otherwise on the face of the

23  complaint I would have to get rid of it.

24         MR. RASCH:  Judge, another other issue here, of

25  course with the defamation claim, you have to either allege

FREDERICK R. GUERINO, C.S.R.        OFFICIAL COURT REPORTER

41

1    that it was defamation per se --

2              THE COURT:  Or causing special harm.

3              MR. RASCH:  Special harm, and that's not alleged

4    here either, your Honor.

5              THE COURT:  Let's not get general; let's get

6    specific.

7              All right.  Ms. Rainer, you do have to plead either

8    special harm or slander per se.  If you can't plead slander

9    per se - I don't know if you can or you can't - you go to the

10   book and read what it is about.  Then you have to establish

11   special harm, and you go to the book and find out what that

12   is about, otherwise it goes just as a matter of pleading.

13   Okay?

14             MS. RAINER:  Yes, Your Honor.

15             THE COURT:  Okay.  So we need a lot more

16   specificity.

17             Title VII, you seem not to understand what a right

18   to sue letter is.  That doesn't mean that the EEOC has said

19   anything other than you have exhausted your EEOC remedies,

20   that's all it means.  It doesn't mean that you have a case.

21   It doesn't mean that you ought to do anything.  It simply

22   says you don't have to come to the EEOC anymore, you can go

23   to the district court because we are not going to decide this

24   case, okay.  And if you think I'm wrong, I invite you to read

25   more about that so that you understand what I'm talking

42

1   about.

2          You put into your draft claims of religious

3   discrimination and sexual discrimination, Title VII-type

4   claims, along with the ADA, the Genetic Information

5   Non-disclosure Act and the Equal Pay Act.  There's nothing in

6   your complaint about any of those, and the fact that there

7   were boxes that were checked in the letter from the EEOC,

8   does not mean that you have stated any cause of action with

9   respect to any of those things.  I strongly suggest that

10  unless you really have an ADA claim, because your client has

11  a disability and you can do all of the pleading under that

12  act, or whatever the Genetic Information Act is or the Equal

13  Pay Act, just take it out.

14          MS. RAINER:  I understand.

15          THE COURT:  Turning to the Federal Trade Commission

16  Act.  Why is it in the next draft?  Did you suddenly find a

17  private cause of action?

18          It is at paragraph 17.

19          MS. RAINER:  I put that under --.

20          THE COURT:  No, fraud is fraud.  Just sticking a

21  statute under your fraud claim that doesn't have a private

22  cause of action, I don't know what you are doing with it.

23          What is it there for?

24          MS. RAINER:  I believe I put it in there was to talk

25  about violation, showing that the fraud and deception are all

FREDERICK R. GUERINO, C.S.R.        OFFICIAL COURT REPORTER

43

1   intertwined.

2        THE COURT:  No, forget the word "intertwined," and

3   don't intertwine anything in your head.  Tease it out, okay.

4   Be specific.  Nothing is mushed together.  Everything is

5   specifically enumerated, okay.  And don't put in statutes

6   that don't have a private cause of action, it doesn't help

7   that I can see.

8        MS. RAINER:  Okay, your Honor.

9        THE COURT:  Okay.  It may well be, but I don't know

10  the answer to the question.  But if you have put down

11  everything that you have to say about why your client, an

12  employee and not an independent contractor, so that we can

13  address this issue on this motion, then the defendant can

14  just address it on this motion.  Okay?

15       MS. RAINER:  Yes, Your Honor.  I did want to mention

16  why I emphasize the EEOC.  It was my understanding when EEOC

17  issued the right to sue letter, it was not only that they had

18  finished their investigation --.

19       THE COURT:  No, no.  What they are telling you is

20  they are not going to do an investigation, so you don't have

21  to stay there anymore.  Just look it up, okay.

22       MS. RAINER:  What I wanted to say is that my clients

23  went, and what they explained to me the EEOC said to them

24  that they do qualify for EEOC protection because of the way

25  that they are paid, the way residuals are paid, the way

FREDERICK R. GUERINO, C.S.R.      OFFICIAL COURT REPORTER

44

1   payments are made to infiniti.

2           THE COURT:  That's a legal issue, and that's an

3   issue I will have to decide based on the allegations.

4           MS. RAINER:  That's why I'm relying --

5           THE COURT:  You can't do that.  You can't do that,

6   because what somebody at the EEOC told your client is

7    completely irrelevant to my decision on whether or not the

8   defendants can knock out your Title VII claims because you

9   cannot plead, and you have not pled that she is an employee.

10  And the fact that the EEOC person said something to your

11  client is not relevant to that

12          MS. RAINER:  No, I understand.  I thought it was my

13  understanding, and when the EEOC gave that letter, they did

14  qualify her that she would be as an employee, as opposed to

15  them saying --

16          THE COURT:  I'm sorry, Ms. Rainer, just don't say it

17  again because I'm telling you that won't work and I don't

18  want to talk about it anymore.  If you want to plead it that

19  way, fine, but you will go down the tubes.

20          As to damages, you can't plead damages -- not just

21  the amounts, we are not going to even talk about the amounts

22  at this point.  We are going to talk about your allegations

23  as to damages.  You say you are entitled to liquidated

24  damages because it is difficult to determine damages.  Well,

25  the whole point about liquidated damages is that they are

FREDERICK R. GUERINO, C.S.R.      OFFICIAL COURT REPORTER

1    liquidated in advance and contained in an agreement that if

2    there is a breach, this will be the liquidated damages.  You

3    don't have that, so I don't see where you get any liquidated

4    damages from.

5          As to any punitive damages you have to allege, it's

6    got to be clear with respect to any particular -- there are

7    some causes of action which, if they survive, could give rise

8    to punitive damages, but there are others which could not.

9    Your breach of contract will never give rise to punitive

10   damages, and your quantum meruit will never give rise to

11   punitive damages.  So you have to look at each cause of

12   action and make a determination as to whether or not there is

13   anything you are seeking or can seek as to attorney's fees.

14   I mean, I'm not even going to begin to tackle that one

15   because attorney's fees -- I mean, ultimately you need to

16   come out of a successful cause of action.  You don't

17   automatically get attorney's fees, and it would have to be

18   very -- I'm not even suggesting you can just ask for

19   attorney's fees now that's enough and it will sort itself

20   out, because there's so much else you have to do, okay.

21         Now, I think that's all I have to say.

22         Let me ask Mr. Rasch, is there anything I missed?

23         MR. RASCH:  Well, Judge, as you probably are aware,

24   I can go on for another hour about our concerns about this

25   complaint.  I think the Court touched on the highlights.  I

1    think towards the end, these punitive damages, liquidated

2    damages, attorney's fees are linked.

3           THE COURT:  They are not separate causes of action,

4    to begin with.  You understand that, don't you, Ms. Rainer?

5           MS. RAINER:  Yes.

6           THE COURT:  Okay.  All they are is a part of my X

7    claim.  For example, were you able to state a RICO claim,

8    which I don't think you can, and maybe one of those you might

9    want to hold off on, but you can ask for treble damages, were

10   you able to state an exacerbated fraud claim, you can ask for

11   punitive damages.  But these are not individual causes of

12   action.  They are the types of damages that are available

13   under particular claims that are actually successfully pled,

14   okay.  So there's really no point in putting a cause of

15   action in there that asks for attorney's fees; it is just not

16   helpful.  Okay?

17          MS. RAINER:  Yes, Your Honor.

18          THE COURT:  Okay.

19          Now, again, like last time, I will -- I want to give

20   you as much time as you need to get it right.  I really mean

21   it this time, I will not do it again.  I will just decide it,

22   and if I dismiss it, it will not be with leave to amend.  It

23   will be dismissed.  Okay?

24          MS. RAINER:  Yes, your Honor.

25          THE COURT:  So take as much time as you need.

FREDERICK R. GUERINO, C.S.R.        OFFICIAL COURT REPORTER

47

1          Would you like to give me some sense of how long

2     that is going to be?

3          MS. RAINER:  I would like at least a month, if

4     possible.

5          THE COURT:  That's fine, it certainly is.  I would

6     rather give you more time and you do it right.

7          MS. RAINER:  Right, only because I must admit once

8     my kids are in school, I have more flexibility.  Between

9     vacations, it's been very difficult this summer.  If it is

10    possible --

11         THE COURT:  You can have as much time as you want.

12    Is one month enough?

13         MS. RAINER:  I think it would be enough.  My only

14    problem is they have commenced an arbitration against my

15    client in Texas.

16         THE COURT:  See, I can't help you with that.

17         MS. RAINER:  I don't know if there's a stay that --

18         THE COURT:  I can't help you with that.

19         MS. RAINER:  I understand.  I understand.  I'm just

20    having a problem with that, and if we can have some kind of

21    communication with the other side to stay or delay that until

22    we have this.

23         THE COURT:  That would have to be some sort of

24    agreement with the other side or some ruling by the

25    arbitrator in Texas.  I have nothing to do with that.

1          MR. RASCH:  We have no intention to staying the

2     arbitration.  We think at the end of the day we think this is

3     at most some kind of vanilla minor contract dispute under

4     which there's an arbitration.  We think all of this was done

5     for an improper purpose, the billion dollar claim.

6          THE COURT:  You will not agree, so I think that's

7     the answer to the question.  You are not going to get the

8     defendants to agree to stay the arbitration.  If there's any

9     other way to figure out to stay the arbitration, go ahead and

10    try.  You can't do it through me.

11         MS. RAINER:  What I wanted to say, in that

12    arbitration, their claim – I will not quote it – basically

13    they are not liable in this case, that's why we filed an

14    arbitration.  So at this stage it is frivolous actually to --

15         THE COURT:  I'm sorry, you bring any argument you

16    have to the arbitrator, not to me.  Okay?

17         MS. RAINER:  I understand, your Honor.  May I have

18    until September 30th?

19         THE COURT:  Yes.  Okay.

20         You know, this time I don't even think premotion

21    letters are necessary.  Why don't you just take that as the

22    complaint.

23         MR. RASCH:  Sure, your Honor.

24         THE COURT:  Okay.  And if there is going to be a

25    motion to the new complaint – and understand that I'm going

FREDERICK R. GUERINO, C.S.R.      OFFICIAL COURT REPORTER

1   to read it as liberally as I can, notwithstanding everything

2   that I said -- I mean, everything I said has to be done.  If

3   it seems to you like it is all there, please don't let us do

4   another motion.  Okay?

5         MR. RASCH:  I hear the Court.  I will say based on

6   the facts that I know, I can't see how a factual claim can be

7   pled.

8         THE COURT:  Maybe that's true.  I'm not telling you

9   you can't bring your motion.  I'm saying I know you will only

10  do it if you feel confident in it.

11        MR. RASCH:  Unless there's something I'm not aware

12  of now, I do anticipate we'll file a motion to dismiss, but

13  we'll look at it very carefully.

14        THE COURT:  If you are going to do that, work on the

15  briefing scheduling and send to me the agreed upon briefing

16  schedule.

17        MR. RASCH:  Absolutely, your Honor.

18        THE COURT:  Okay.  Have a good day.

19        MS. RAINER:  Thank you very much, your Honor.

20        MR. RASCH:  Thank you.  Good-bye.

21        THE COURT:  Good-bye.

22        (The proceedings are concluded.)

23

24

25

FREDERICK R. GUERINO, C.S.R.        OFFICIAL COURT REPORTER